# FIRST AMENDMENT TO
# PURCHASE AND SALE AGREEMENT

This First Amendment to Purchase and Sale Agreement (this "Amendment") is made and entered into effective as of the 21st day of July, 2020 ("Amendment Effective Date") by and between SUFFERN PARTNERS LLC a New York limited liability company ("Seller"), and TT HOLDER ENTITY LLC, a New Jersey limited liability company (mis-named in the Agreement as "TT") ("Buyer").

## WITNESSETH:

WHEREAS, Seller and Buyer heretofore entered into that certain Purchase and Sale Agreement dated March 9, 2020 (the "Agreement"), pursuant to the terms of which Seller agreed to sell and Buyer agreed to buy the real property known as (i) 25 Old Mill Road, Suffern, New York 10901 (Section: 55.22, Block 1, Lot 1), (ii) 19 Hemion Road, Montebello, New York 10901 (Section: 55.6, Block 1, Lot 1) and (iii) Route 59, Suffern, New York 10901 (Section: 55.37, Block 1, Lot 31) each located in Rockland County, New York as more particularly described therein; and

WHEREAS, Seller and Buyer now desire to amend the Agreement as more particularly described below.

NOW, THEREFORE, for and in consideration of the premises, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer hereby agree as follows:

## AGREEMENTS:

1. All terms which are defined in the Agreement shall have the same meanings when used herein, unless specifically provided herein to the contrary.

2. Seller and Buyer hereby agree that Section 1.3(a) of the Agreement is hereby amended in its entirety to read as follows:

(a)    The purchase price to be paid by Buyer to Seller for the Property (the "Purchase Price") is FIFTY-TWO MILLION FIVE HUNDRED THOUSAND DOLLARS ($52,500,000). A portion of the Purchase Price in the amount of $33,900,000 shall be payable through Buyer's assumption of the Assumed Financing as described in 7(f) hereof or by Buyer paying off in full all sums representing the Assumed Financing and the Assumed Mortgage (as hereafter defined). With respect to the allocation of the Purchase Price among the tracts comprising the Property and any tangible personal property included in the sale, Buyer and Seller shall endeavor in good faith to agree on such allocation. In the event that Buyer and Seller are unable to agree on such allocation on or before ten (10) days prior to the then Closing Date, Buyer and Seller shall mutually select in good faith a third party to determine the allocation and such third party's determination shall be conclusive and binding upon the parties. In the

event that Buyer and Seller are not able in good faith to agree upon a third party to determine the allocation on or before five (5) days prior to the then Closing Date, then the Broker shall determine the allocation and such determination shall be conclusive and binding on the parties.

3. Seller and Buyer hereby agree that Section 1.3(d) of the Agreement is hereby amended in its entirety to read as follows:

(d)    The Purchase Price assumes a $3,500,000 investment in Buyer's purchasing entity by Seller or its designee ("Seller's Investment") which shall be made on before Closing. Such investment shall be as a "member" with Seller (or its designee) having no different management or voting rights than any of the Buyer's other investors. Management of said entity shall be solely vested in Azi Mandel and/or Adam Mermelstein (directly or indirectly, through one or more entities controlled by them or by any one or more of them) and Seller (or its designee) shall have no management function whatsoever. If, for any reason, Seller or its designee fails to satisfy the requirement of investing said $3,500,000 in the Buyer's purchasing entity (other than by reason of Buyer's refusal to permit Seller to remove equipment and fixtures from the Property which constitute "Excluded Assets"), the Purchase Price shall be reduced by $2,500,000 to $50,000,000.

4. Seller and Buyer hereby agree that Section 1.4 of the Agreement is hereby amended in its entirety to read as follows:

1.4    **Closing**. The Closing for the sale of the Property pursuant to the terms of this Agreement shall take place in escrow with the Title Company (as hereafter defined) or as otherwise mutually agreed at or before 5:00 P.M. EDT August 27, 2020 (the "Closing Date"). In the event that Seller is not able to satisfy the conditions set forth in Section 3.1 (c) and (d) or Section 6.8 or is unable to arrange for the Assumed Financing (as hereafter defined) as of the Closing Date, the Closing Date shall be extended for a period until Seller is able to satisfy the foregoing conditions and arrange for the Assumed Financing. Notwithstanding the foregoing, if Seller is unable to accomplish all of the foregoing within six (6) months of the Amendment Effective Date, then Seller or Buyer can terminate the Agreement on notice to the other, in which event the Deposit shall be returned to Buyer and the Agreement shall be null and void except for those provisions which, by their terms, survive termination of the Agreement.

5. Seller and Buyer hereby agree that with reference to Section 2.2 of the Agreement, (i) the Due Diligence Period is deemed expired as of the Amendment Effective Date, (ii) Buyer shall have no further right to terminate the Agreement pursuant to the terms of Section 2.2 and (iii) this Amendment shall become effective only upon delivery by wire transfer of the Additional Deposit by Buyer to Escrow Agent. Notwithstanding the expiration of the Due Diligence Period, the effect of Buyer's Notice dated April 21, 2020 and Seller's Cure Response thereto dated April 24, 2020 shall remain in place.

6. Seller and Buyer agree that Section 3.1(e) of the Agreement is hereby amended to insert after the work "mortgages" on the third line thereof the following parenthetical

   (other than in respect to the Assumed Financing, as hereafter defined)

7. Seller and Buyer hereby agree that Article VI of the Agreement is hereby amended to add a Section 6.9 as follows:

   6.9     **Certiorari Claims**. Seller agrees not to settle any certiorari claims with respect to real estate taxes due on the Property for the year 2019, 2020 or any subsequent year without Buyer's consent.

8. Seller and Buyer hereby agree that Section 7.1 of the Agreement is hereby amended to add the following subsections (f) and (g):

   (f)     Seller shall have arranged for Buyer to assume an indebtedness in the amount of $33,900,000 (the "Assumed Financing") to CPIF Lending, LLC ("CPIF") secured in part by that certain Amended, Restated and Consolidated Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated September 6, 2017 made by Seller and North 14th Street Realty Associates LLC in favor of CPIF in the original principal amount of $33,000,000 as the same may be amended, restated, modified or substituted for (the "Assumed Mortgage"). The Assumed Financing shall contain the following terms notwithstanding any contrary terms on the documents currently evidencing such loan: (i) the term of the Assumed Financing shall be for a period of eighteen months from the Closing Date; (ii) the Assumed Financing will bear interest at a rate of six and nine-tenths percent (6.9%) per annum; (iii) Buyer shall prepay at Closing to CPIF an interest reserve for interest payment due and owing for the eighteen (18) month term of the Assumed Financing in the amount of $3,508,650. Buyer's assumption of the Assumed Financing shall represent $33,900,000 of the Purchase Price and (v) shall contain such terms and conditions as are typically set forth in a loan assumption transaction.

   (g)     As part of the Assumed Financing, each of Azi Mandel and Adam Mermelstein on Buyer's behalf and each of David Gefner and Isaac Lefkowitz on Seller's behalf shall personally and jointly and severally indemnify and save the other party harmless from any loss or damage from a breach of the Assumed Mortgage or other loan documents relating to the Assumed Financing as it relates to that portion of the mortgaged premises not owned by the affiliate of the indemnifying persons. Said cross-indemnity shall be further evidenced by a cross-indemnity agreement to be negotiated in good faith by the parties and their counsel prior to the Closing Date.

9. Seller and Buyer hereby agree that Article VII of the Agreement is hereby amended to add a Section 7.3 as follows:

   7.3     **Drop and Swap**. Notwithstanding anything herein to the contrary, Seller, at the request of, and at the sole expense of, Buyer (such request to be made no later than five (5) business days prior to the Closing Date), shall create one or more subsidiaries

or affiliates pursuant to formation documents prepared by Buyer and approved by Seller, and, at Closing (i) Seller shall transfer, assign and convey to such subsidiary or affiliate, by deed, the Property and immediately thereafter (ii) assign all of Seller's membership interests in such subsidiary or affiliate to Buyer pursuant to an assignment agreement prepared by Buyer and reasonably approved by Seller, provided, however, that none of such actions shall result in any third party cost or expense to Seller. In the event Buyer elects to make a request pursuant to this Section 7.3 the parties hereto agree to negotiate in good faith appropriate amendments to this Agreement, including, but not limited to, the closing procedures and Seller's representations and warranties, all at Buyer's sole cost and expense.

10. Seller and Buyer agree that at Closing, Buyer shall receive a credit of $200,000 for environmental matters relating to the Property.

11. This Amendment may be executed in separate counterparts, each of which shall be an original and all of which when taken together shall constitute one and the same instrument. Further, this Amendment may be executed by facsimile or by portable document format (.pdf) signature, such that execution of this Amendment by facsimile or by portable document format (.pdf) signature shall be deemed effective for all purposes as though this Amendment was executed as a "blue ink" original.

12. The Agreement, as amended hereby, shall be and remain in full force and effect and is hereby ratified and confirmed by Seller and Buyer. To the extent any of the terms and provisions of the Agreement are inconsistent with the terms and provisions of this Amendment, the terms and provisions of this Amendment shall govern and control.

13. Neither this Amendment nor any provision hereof may be waived, modified, amended, discharged or terminated except by an instrument in writing signed by the party against which the enforcement of such waiver, modification, amendment, discharge or termination is sought, and then only to the extent set forth in such instrument.

IN WITNESS WHEREOF, Seller and Buyer have executed this Amendment to be effective as of the date set forth above.

SUFFERN PARTNERS LLC

By:     GOLDMANRX, INC.

By: _____
Name:   Isaac Lefkowitz
Title:   President


TT HOLDER ENTITY LLC


By: _____
Name:
Title:

IN WITNESS WHEREOF, Seller and Buyer have executed this Amendment to be effective as of the date set forth above.

SELLER:

SUFFERN PARTNERS LLC

By:     GOLDMANRX, INC.

By:_____
Name:   Isaac Lefkowitz
Title:  President

TT HOLDER ENTITY LLC

By:_____
Name:
Title:

Signature Page to First Amendment to Purchase and Sale Agreement