DAVIDOFF HUTCHER & CITRON LLP
*Proposed Attorneys for the Debtor*
120 Bloomingdale Road, Suite 100
White Plains, New York 10605
(914) 381-7400
Jonathan S. Pasternak, Esq.
Robert L. Rattet, Esq.

*Hearing Date:*
*June 18, 2021 @ 2:00 p.m.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>SUFFERN PARTNERS LLC,<br><br>      Debtor. | Chapter 11<br><br>Case No. 21-22280 (SHL) |

## DEBTOR'S MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT WITH CPIF LENDING, LLC, PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

Suffern Partners LLC, the above-captioned debtor and debtor-in-possession (the "Debtor"), by its undersigned proposed attorneys, Davidoff Hutcher & Citron LLP, hereby moves the Court (this "Motion") for entry of an order approving a settlement agreement among the Debtor, CPIF Lending, LLC ("CPIF"), and certain non-debtor guarantors and pledgors, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. In support of this Motion, the Debtor respectfully states as follows:

### PRELIMINARY STATEMENT

1. By this Motion, the Debtor seeks approval of a settlement pursuant to which the proceeds of a Court-approved sale will be used to satisfy the Debtor's first lien lender at a discounted payoff, creating significant value for the Debtor's estate. The form of settlement agreement is attached hereto as **Exhibit A**. This settlement is in the best interests of the Debtor's estate because it satisfies the estate's largest debt (and first priority secured debt) at less than face

value, stops the accrual of significant and mounting post-petition interest and certain costs and fees, and avoids litigation, and thus preserves significant value for all stakeholders. Indeed, the proposed settlement provides the Debtor's estate with over $8.3 million in value. Accordingly, and as discussed in more detail below, the Debtor request that the Court enter the proposed order attached hereto as **Exhibit B** approving the settlement.

## JURISDICTION

2. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

3. The statutory predicates for the relief requested herein are section 105(a) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019.

## FACTUAL BACKGROUND

**I.     CPIF's Pre-Petition Loan to the Debtor and Subsequent Defaults.**

4. On or about September 6, 2017, CPIF made a loan to the Debtor, as one of two co-borrowers, in the original maximum principal amount of $33,000,000 (the "Loan"). The other borrower under the loan is non-debtor North 14th Street Realty Associates, LLC ("North 14th Street," and together with the Debtor, the "Borrower"). The Loan is evidenced by, among other things, an Amended, Restated and Consolidated Promissory Note made by Borrower dated as of September 6, 2017, in the original principal amount of $33,000,000.

5. CPIF made the loan to facilitate Borrower's acquisition of certain commercial real estate, including that real property located at 25 Old Mill Road, Town of Ramapo, Village of Suffern, and 19 Hemion Road in the Village of Suffern, New York (the "Property").

6. The Debtor is currently the owner of the Property subject to CPIF's security interests therein. Specifically, CPIF's Loan is secured by, among other things, that certain

Amended, Restated and Consolidated Mortgage, Assignment of Leases and Rents, Assignment of Contracts, Security Agreement and Fixture Filing dated as of September 6, 2017 against the real property legally described therein, including the Property. The Loan is also secured by, among other things, a guaranty given by Ms. Goldie Reisman and certain Pledge and Security Agreements given by Ms. Reisman, RSOM Corp., Mozes Reisman, and GoldmanRX, Inc..

7. The Loan is currently in default for, among other things, the failure to repay the Loan on the maturity date and the transfer by RSOM Corp. and Ms. Reisman of their membership interests in the Debtor to GoldmanRX, Inc. As a consequence of the defaults under the Loan, the Loan is accruing interest at the default rate, among other fees and charges.

8. As of May 19, 2021, the amount owing to CPIF under the Loan is no less than $45,284,050, plus accruing costs, fees, interest, and default interest, as follows:

> Principal: $33,000,000.00; plus
> Interest (contract rate): $10,892,749.91; plus
> Interest (default rate): $3,784,000.00; plus
> Late fees: $212,024.98; plus
> Exit Fee: $330,000.00; plus
> Costs, expenses and fees billed to date: $427,096.38; less
> Reserves: $(3,361,821.27); plus
> Costs, expenses, and fees incurred but not yet billed; plus
> Accruing interest and default interest.

**II.  The Debtor's Bankruptcy Petition and Proposed Sale.**

9. On May 16, 2021 (the "Petition Date"), the Debtor commenced this case (the "Bankruptcy Case") by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code §§ 101, *et seq.* (the "Bankruptcy Code").

10. As set forth in more detail in the *Declaration of Issac Lefkowitz Pursuant to Local Bankruptcy Rule 1007-2* (ECF Doc. 3) (the "Lefkowitz Declaration"), the Property is currently generating no income, while interest on CPIF's loan, legal fees, and real estate taxes continue to accrue while the Debtor must also continue to maintain and upkeep the Property.

11. In order to maximize the value of the Property and cut off the continuing accruals and costs associated with the ownership and management of the Property, the Debtor engaged CBRE as broker to lease or sell the Property. After an extensive marketing period which resulted in multiple expressions of interest, on March 9, 2020, the Debtor entered into a Purchase and Sale Agreement (the "PSA") with TT Holder Entity LLC (the "Purchaser"), a party wholly unaffiliated or related to the Debtor or its owners, managers, or insiders, for $55,000,000, reduced to $52,500,000 pursuant to the First Amendment to the PSA. Lefkowitz Dcl. ¶ 44.

12. Through this Chapter 11 case, the Debtor is working to consummate the sale to the Purchaser expeditiously, and then seek confirmation of a liquidating chapter 11 plan that would pay all allowed creditors in full and likely provide a return to equity. As the first step in this process, the Debtor filed on May 17, 2021 its *Application for Order Pursuant to Sections 363(b), (f), and (m) and 365(b) of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004 Authorizing and Approving (1) Assumption of Pre-Petition Purchase and Sale Agreement and Broker Commission Agreement in Connection Therewith and (2) Sale of the Debtor's Real Property and Improvements Thereon Free and Clear of All Liens, Claims, Encumbrances and Interest and Granting Good Faith Purchaser Status in Connection Therewith* (D.I. 7) (the "Sale Motion"). The Debtor's settlement with CPIF is the second step towards an orderly and successful resolution of this Chapter 11 case.

### III. The Settlement with CPIF.

13. The Debtor's settlement with CPIF is an important part in the Debtor's plan to monetize the Property and distribute value to all legitimate stakeholders.

14. The Debtor and CPIF (among others) have entered into that certain Settlement Agreement and Release attached hereto as **Exhibit A** (the "Settlement Agreement"), whereby the

parties agree to resolve the Loan and related claims through proceeds from the sale of the Property at closing following approval of the Sale Motion.

15. Specifically, the parties have agreed to the following:[1]

(a) <u>Discounted Payoff upon Closing</u>. At the closing of the sale of the Property, CPIF will receive the Settlement Payment equal to $36,982,533.

(b) <u>Mutual Releases</u>. CPIF and the Loan Parties (as defined in the Settlement Agreement) will exchange mutual releases of all claims arising from the beginning of time through the Effective Date of the Settlement Agreement relating to or arising from the Loan Documents or the lending relationship created thereby (excluding any claims that may arise under the Settlement Agreement).

(c) <u>Termination of Automatic Stay Upon Default</u>. If the Debtor defaults under the Settlement Agreement because the closing of the sale of the Property does not occur by July 16, 2021, then the automatic stay provided by section 362 of the Bankruptcy Code shall be deemed terminated as to the Lender, without the need for any further action or approval by the Bankruptcy Court or otherwise, and Lender may immediately take all steps it deems necessary or appropriate in its sole discretion to collect all amounts owed under the Loan and the Loan Documents, including by commencing a foreclosure action regarding the Property or any other litigation against Borrower or any other party to recover the amounts owing under the Loan.

## **RELIEF REQUESTED**

16. By this Motion, the Debtor seeks approval of the Settlement Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. Rule 9019 provides that "[o]n motion by the [T]rustee and after notice and a hearing, the court may approve a compromise or

---

[1] In the event of any conflict between the summary of terms provided in this Motion and the terms of the Settlement Agreement, the terms of the Settlement Agreement control.

settlement. Notice shall be given to creditors, the United States trustee, the debtor ... and to any other entity as the court may direct." Fed. R. Bankr. P. 9019(a).

17. A bankruptcy court has the authority to approve a settlement or compromise with a debtor under Bankruptcy Rule 9019 where the settlement "is supported by adequate consideration, is 'fair and equitable,' and is in the best interests of the estate." In re Ionosphere Clubs, Inc., 156 B.R. 414, 426 (S.D.N.Y. 1993).

18. As the Second Circuit has recognized,

> There is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion – and the judge will not be reversed if the appellate court concludes that the settlement lies with that range.

Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972).

19. The decision to accept or reject a compromise or settlement is within the sound discretion of the Bankruptcy Court. See In re Ionosphere Clubs, Inc., 156 B.R. at 426.

20. The Court's exercise of discretion to approve a settlement is guided by its obligation to:

> [A]pprise himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968).

21. Thus, in evaluating a proposed settlement, courts within this jurisdiction have applied the Iridium factors, which are as follows:

    a. the balance between the litigation's possibility of success and the settlement's future benefits;

    b. the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay;

    c. the paramount interests of creditors;

    d. whether other parties in interest support the settlement;

    e. the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing the settlement;

    f. the nature and breadth of releases to be obtained by officers and directors; and

    g. the extent to which the settlement is the product of arm's length bargaining.

See Motorola, Inc v. Official Comm. of Unsecured Creditors and JP Morgan Chase Bank, N.A. (In re Iridium Operating LLC), 478 F.3d 452, 462 (2d Cir. 2007).

22. The Court should also be guided by "the general public policy favoring settlements." In re Hibbard Brown & Co., Inc., 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998); see Nellis v. Shugrue, 165 B.R. 115, 123 (S.D.N.Y. 1994) ("[T]he general rule [is] that settlements are favored and, in fact, encouraged...."); see also In re Lakeland Dev. Corp., 48 B.R. 85, 90 (Bankr. D. Minn. 1985) ("[T]he law favors compromise"), aff'd, 782 F.2d 1048 (8th Cir. 1985), cert. denied, 476 U.S. 1130 (1986).

23. While a court must make its own considered judgment, it should not substitute its judgment for that of the debtor. See In re Carla Leather, Inc., 44 B.R. 457, 465 (S.D.N.Y. 1984).

24. Additionally, section 105(a) of the Bankruptcy Code grants broad authority to a Court to enforce the provisions of the Bankruptcy Code under equitable common law doctrines. Section 105(a) provides, in relevant part, as follows:

> The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title.

11 U.S.C. § 105.

25. The Debtor submits that the settlement set forth herein falls well above the lowest point in the range of reasonableness and represents a fair resolution of CPIF's Loan. CPIF is willing to take far less than the full value of its claim in exchange for a prompt distribution from the proceeds of the sale of the Property, and the backstop of stay relief if the sale of the Property does not promptly close. The PSA provides for a sale price of $52.5 million. Through approval of the Settlement Agreement, the Debtor's estate will have access to an additional approximately $8.3 million of those proceeds as a result of satisfying CPIF's $45.3 million claim for approximately $37 million. Approval of the settlement agreement also eliminates any litigation with CPIF over the Loan, and avoids collateral claims against the Debtor based upon CPIF's pursuit of payment from non-debtors (who may then seek contribution from the Debtor).

26. Absent approval of the settlement agreement, by contrast, the Property and Debtor (among others) will be subject to CPIF's full claim, which will continue to accrue default interest, fees, and other charges, including litigation-related expenses, which the Debtor cannot afford. The Settlement Agreement was executed at arms' length, by parties represented by competent and experienced counsel. The Debtor submits that approval of the Settlement Agreement is in the paramount interest of all stakeholders, and in the best interests of the estate.

## NOTICE

27. The Debtor submits that it has appropriately served notice of this Motion upon all parties in interest entitled to notice pursuant to Rule 2002, and upon the creditors included on the list filed pursuant to Rule 1007(d), and that such notice was appropriate under the circumstances.

**WHEREFORE,** the Debtor respectfully requests that the Court enter the Order attached as **Exhibit B** hereto granting the relief requested herein and such other and further relief as the Court deems just and proper under the circumstance.

Dated: May 21, 2021

                              DAVIDOFF HUTCHER & CITRON LLP
                              *Proposed Attorneys for the Debtor*
                              120 Bloomingdale Road, Suite 100
                              White Plains, New York 10605
                              (914) 381-7400

                              By: */s/ Jonathan S. Pasternak*
                                    Jonathan S. Pasternak

# Exhibit A

[Settlement Agreement]

SEE ATTACHED

# Exhibit B

[Proposed Order]

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Chapter 11 |
| SUFFERN PARTNERS LLC, | Case No. 21-22280 (SHL) |
| Debtor. |  |

**ORDER APPROVING DEBTOR'S MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT WITH CPIF LENDING, LLC, PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

This matter, having come before the Court upon the *Debtor's Motion for Approval of Settlement Agreement with CPIF Lending, LLC, Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure* (the "Motion");[1] and a hearing having been held on the Motion on June 18, 2021, and upon due deliberation thereon it appearing the Court having considered the Motion and any responses thereto; and sufficient notice of the Motion having been given, such that no other notices is necessary; and good cause appearing therefor:

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is granted as set forth herein.

2. The Settlement Agreement attached as Exhibit A to the Motion is approved. The Debtor may take all steps necessary or appropriate to carry out its duties and obligations under the Settlement Agreement. Without limiting the generality of the foregoing, section 5(B) of the Settlement Agreement is hereby specifically approved, and upon the occurrence of an Event of Default pursuant to section 4(D) of the Settlement Agreement, the automatic stay provided by section 362 of the Bankruptcy Code shall be deemed terminated upon five (5) business days' notice to the Debtor, the US Trustee and any committee appointed in the Debtor's Chapter 11

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

case, as to CPIF, without the need for any further action or approval by this Court or otherwise, and CPIF may immediately take all steps it deems necessary or appropriate in its sole discretion to collect all amounts owed under the Loan and the Loan Documents, including by commencing a foreclosure action regarding the Property or any other litigation against Borrower or any other party to recover the amounts owing under the Loan.

3. This Court retains jurisdiction over any matter regarding the interpretation or enforcement of this Order or the Settlement Agreement.

Dated: White Plains, New York
      June __, 2021

                                                  HON. SEAN H. LANE
                                                  UNITED STATES BANKRUPTCY JUDGE