# SETTLEMENT AGREEMENT AND RELEASE

THIS SETTLEMENT AGREEMENT AND RELEASE (this "***Agreement***"), effective as of the Effective Date (as defined below), is made by and among SUFFERN PARTNERS LLC, a New York limited liability company (the "***Bankruptcy Borrower***"), NORTH 14TH STREET REALTY ASSOCIATES LLC, a New York limited liability company ("***Kings County Borrower***" and, together with Bankruptcy Borrower, jointly and severally as co-borrowers, collectively or individually as the context may require, "***Borrower***"), GOLDIE REISMAN, an individual ("***Guarantor***"), RSOM Corp., a New York corporation ("***RSOM***"), GOLDMANRX, INC., a New York corporation ("***Bankruptcy Pledgor***"), MOZES REISMAN, an individual ("***Kings County Pledgor***" and together with Guarantor and Bankruptcy Pledgor, collectively or individually as the context may require, "***Pledgor***"), and CPIF LENDING, LLC, a Washington limited liability company ("***Lender***"). Borrower, Pledgor, and Guarantor are collectively referred to herein as the "***Loan Parties***" and each as a "***Loan Party***."

## RECITALS

A.  Borrower obtained a loan from Lender in the maximum principal amount of $33,000,000.00 (the "***Loan***") pursuant to the terms of a Loan Agreement between Lender and Borrower dated as of September 6, 2017 (as amended or modified, the "***Loan Agreement***"). The Loan is also evidenced by an Amended, Restated and Consolidated Promissory Note made by Borrower to Lender dated as of September 6, 2017, in the maximum principal amount of $33,000,000.00 (together with any amendments or modifications thereto, the "***Note***").

B.  Borrower's obligations under the Loan Agreement and the Note are secured by, among other things, that certain Amended, Restated and Consolidated Mortgage, Assignment of Leases and Rents, Assignment of Contracts, Security Agreement and Fixture Filing dated as of September 6, 2017 (the "***Mortgage***"), against the real property legally described therein (the "***Project***").

C.  The Loan Agreement, the Note, the Mortgage, all other agreements and instruments that evidence, secure, or otherwise govern the Loan, as the foregoing may be amended, modified and amended and restated are collectively referred to herein as the "***Loan Documents***."

D.  Borrower, Guarantor, and Lender entered into that certain Forbearance Agreement dated as of January 4, 2019 (the "***First Forbearance Agreement***"). Borrower and Guarantor defaulted under the First Forbearance Agreement. Accordingly, any agreement by Lender to forbear under the First Forbearance Agreement or otherwise is null and void.

E.  The Loan is currently in default for, among other things, failure to repay the Loan on the maturity date.

F.  As of May 19, 2021, the amounts due and owing to Lender under the Loan is not less than $45,284,050 plus accruing costs, fees, interest, and default interest, as follows:

|  |  |
|---|---|
| Principal: | $33,000,000.00; plus |
| Interest (contract rate): | $10,892,749.91; plus |
| Interest (default rate): | $3,784,000.00; plus |
| Late fees: | $212,024.98; plus |
| Exit Fee: | $330,000.00; plus |
| Costs, expenses and fees billed to date: | $427,096.38; less |
| Reserves: | $(3,361,821.27);[1] plus |

Costs, expenses, and fees incurred but not yet billed;   plus
Accruing interest and default interest.

G.    On May 16, 2021, the Bankruptcy Borrower filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), captioned *In re Suffern Partners LLC*, Case No. 21-22280 (the "**Bankruptcy Case**").

H.    In the Bankruptcy Case, and subject to the approval of the Bankruptcy Court, the Bankruptcy Borrower proposes to sell all right, title, and interest in that part of the Project that it owns (the "**Suffern Property**") to a third party (the "**Bankruptcy Sale**").

I.    Subject to compliance with all of the terms, covenants, and conditions of this Agreement, Lender and the Loan Parties have agreed to resolve all claims and disputes among them.

## AGREEMENT

NOW, THEREFORE, in consideration for the foregoing, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound and under seal, agree as follows:

Section 1. **Recitals and Definitions**. The foregoing Recitals (including, but not limited to, the recital setting forth the amounts due and owing under the Loan to Lender) are hereby acknowledged and confirmed by the Loan Parties as true and correct and are incorporated herein by reference as if set forth at length.  The recitals are a substantive, contractual part of this Agreement.  Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Loan Agreement.

Section 2. **Conditions Precedent and Effective Date**. This Agreement shall become effective only upon satisfaction of the following conditions precedent (collectively, the "**Conditions Precedent**") (the date on which all of the Conditions Precedents are satisfied is the "**Effective Date**"):

A.    Execution and delivery to Lender of this Agreement by each Loan Party;

B.    Execution of this Agreement by Lender;

---

[1] The reserves were applied on May 14, 2021.

2

      C.      Entry of an order by the Bankruptcy Court approving the Bankruptcy Sale, which order shall be in a form acceptable to Lender in Lender's sole discretion (the "***Sale Order***"); and

      D.      Entry of an order by the Bankruptcy Court approving this Agreement, which order shall be in a form acceptable to Lender in Lender's sole discretion (the "***9019 Order***").

      Section 3.  **Settlement Payment**.  Following the occurrence of the Effective Date, Borrower shall remit to Lender the sum of $36,982,533 in immediately available funds (the "***Settlement Payment***"), and such amount shall be paid to Lender (or Lender's designee) at and through the closing of the Bankruptcy Sale (the "***Closing***") in full and final satisfaction of the Loan and all amounts owed to Lender pursuant to the Loan Documents.

      Section 4.  **Events of Default**. The occurrence of any one of the events described below shall be an "***Event of Default***" under this Agreement:

      A.      The breach by any Loan Party of any term or covenant contained in this Agreement, or the making by any Loan Party of any false or misleading representation in this Agreement;

      B.      The Bankruptcy Court's failure to enter a Sale Order on or before June 30, 2021;

      C.      The Bankruptcy Court's failure to enter a 9019 Order on or before June 30, 2021;

      D.      The failure of the Closing to occur on or before July 16, 2021; or

      E.      The failure of Lender to receive the full Settlement Payment in immediately available funds at or before the Closing.

      Section 5.  **Remedies; Termination of Automatic Stay**.

      A.      Upon the occurrence of any Event of Default and the Loan Parties' failure to cure such Event of Default within 5 business days after the Lender has provided notice of such Event of Default to the Bankruptcy Borrower and the Office of the United States Trustee, Region 2 (the "***U.S. Trustee***"), then subject only to applicable law (including the Bankruptcy Code, but as limited by paragraph 5(B) of this Agreement), Lender may exercise any or all of its rights and remedies under the Note and the other Loan Documents, this Agreement, and/or applicable law, to collect all amounts due under the Loan and Loan Documents as if this Agreement did not exist.

      B.      Additionally, upon the occurrence of an Event of Default pursuant to section 4(D) of this Agreement and the Loan Parties' failure to cure such Event of Default within 5 business days after the Lender has provided notice of such Event of Default to the Bankruptcy Borrower and the U.S. Trustee, the automatic stay provided by section 362 of the Bankruptcy Code shall be deemed terminated immediately as to the Lender, without the need for any further action or approval by the Bankruptcy Court or otherwise, and Lender may immediately take all steps it deems necessary or appropriate in its sole discretion to collect all amounts owed under the Loan and the Loan Documents, including by commencing a foreclosure action regarding the Property or any other litigation against Borrower or any other party to recover the amounts owing under the Loan.

3

C. In the event that Lender exercises its rights and remedies, each Loan Party shall (i) cooperate with Lender and (ii) refrain from taking any action to prevent the legal actions from being completed promptly including, without limitation, the assertion of any defense, counterclaim, cross-claim, or other defensive action of any kind, other than claims or defenses based on (x) Lender's default under this Agreement, or (y) Lender's default under the Loan Documents arising out of any action or inaction of Lender that occurs after the Effective Date of this Agreement.

Section 6. **Releases by Loan Parties**. Upon the Effective Date, each Loan Party, on behalf of itself and any person or entity directly or indirectly claiming by or through such Loan Party (collectively, the "***Loan Party Releasors***"), hereby unconditionally remises, releases, and forever discharges Lender and Trimont Real Estate Advisors LLC, as servicer for Lender ("***Servicer***"), and each of Lender's and Servicer's respective past and present direct and indirect owners, shareholders, partners, members, advisors (including Columbia Pacific Advisors, LLC), officers, directors, agents, parent corporations, subsidiaries, affiliates, trustees (including without limitation under any deed of trust, mortgage, and/or deed to secure debt), administrators, servicers, contractors, attorneys, predecessors (including without limitation any prior holders of the Loan Documents), successors, and assigns and the heirs, executors, administrators, successors, and assigns of any such person or entity (collectively, the "***Lender Releasees***"), of and from any and all manner of actions, causes of action, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, promises, warranties, guaranties, representations, liens, mechanics' liens, judgments, claims, counterclaims, crossclaims, defenses, and/or demands whatsoever, including claims for contribution and/or indemnity, whether now known or unknown, past or present, asserted or unasserted, contingent or liquidated, at law, by statute or in equity, or resulting from any assignment, if any (collectively, the "***Claims***"), which any of the Loan Party Releasors ever had, now have, or may have against any of the Lender Releasees, for or by reason of any cause, matter or thing whatsoever, arising from the beginning of time to the Effective Date hereof relating to or arising from the Loan Documents or the lending relationship created thereby; provided, however, that nothing herein shall be construed as a release of any Claims arising under this Agreement.

Section 7. **Releases by the Lender**. Upon Lender's receipt of the Settlement Payment, Lender, on behalf of itself and any person or entity directly or indirectly claiming by or through Lender (collectively, the "***Lender Releasors***"), hereby unconditionally remises, releases, and forever discharges each Loan Party, and each Loan Party's respective past and present direct and indirect owners, shareholders, partners, members, officers, directors, agents, parent corporations, subsidiaries, affiliates, trustees (including without limitation under any deed of trust, mortgage, and/or deed to secure debt), administrators, servicers, contractors, attorneys, predecessors, successors, and assigns and the heirs, executors, administrators, successors, and assigns of any such person or entity (collectively, the "***Loan Party Releasees***"), of and from any and all manner of actions, causes of action, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, promises, warranties, guaranties, representations, liens, mechanics' liens, judgments, claims, counterclaims, crossclaims, defenses, and/or demands whatsoever, including claims for contribution and/or indemnity, whether now known or unknown, past or present, asserted or unasserted, contingent or liquidated, at law, by statute or in equity, or resulting from any assignment, if any (collectively, the "***Claims***"), which any of the Lender Releasors ever had, now have, or may have against any of the Lender Releasees, for or by reason of any cause, matter or thing whatsoever, arising from the beginning of time to the Effective Date hereof relating to or

arising from the Loan Documents or the lending relationship created thereby; provided, however, that nothing herein shall be construed as a release of any Claims arising under this Agreement.

Section 8. **Representations and Warranties of the Loan Parties**. Each Loan Party hereby makes the following representations and warranties to Lender:

A. Each entity Loan Party is duly organized, validly existing, and in good standing under the laws of its state of organization, has the power and authority to own its properties and assets, to carry on its businesses as now being conducted, and is qualified to do business in every jurisdiction in which it is required to qualify to do business;

B. The execution, delivery, and performance of this Agreement and any other documents evidencing or relating hereto have been duly authorized by all action required for the lawful creation and issuance of such documents and will not violate any provisions of law, any order of any court or governmental agency, or the organizational documents of each entity Loan Party;

C. Each Loan Party has the power and authority to execute, deliver and perform this Agreement;

D. Each Loan Party has not assigned, pledged, hypothecated and/or otherwise divested itself and/or encumbered all or any part of the Claims being released by this Agreement;

E. Each Loan Party (i) is represented by or had the opportunity to be represented by legal counsel of its choice in regard to the transaction provided for by this Agreement, (ii) is fully aware and clearly understands all of the terms and provisions contained in this Agreement and in all documents executed in connection herewith, (iii) has voluntarily, with full knowledge and without coercion or duress of any kind, entered into this Agreement and the documents executed in connection herewith, and (iv) is not relying on any representations either written or oral, express or implied, made to it by Lender;

F. There is no action, suit, or proceeding at law or in equity or by or before any governmental instrumentality or other agency now pending, or to the best knowledge of any Loan Party, threatened by or against or affecting any Loan Party or any of their respective properties or rights which, if adversely determined, would impair the right of any Loan Party to carry on his, her, or its business substantially as now conducted or would adversely affect the financial condition, businesses, or operations of any Loan Party, or which would impair any Loan Party's performance of its obligations under this Agreement or call into question the enforceability of this Agreement;

G. Neither this Agreement nor any other document, statement, financial statement, or certificate furnished to Lender by or on behalf of any Loan Party in connection herewith, contains an untrue statement of a material fact with respect to the financial condition or properties of any Loan Party or omits to state a material fact necessary to make the statements contained therein not misleading or, insofar as any Loan Party can now foresee, may in the future materially adversely affect the financial condition or properties of any Loan Party which has not been set forth in this Agreement or in a document, statement, financial statement, or certificate furnished to Lender in connection herewith; and

5

H.      Subject only to entry of a 9019 Order, this Agreement is a legal, binding, and enforceable obligation of each Loan Party enforceable against each Loan Party in accordance with its terms.

Section 9.  **Covenants**. Each Loan Party covenants and agrees that it shall:

A.      Make all commercially reasonable efforts, at its own expense, and in good faith, to obtain prompt entry of a 9019 Order.

B.      Make all commercially reasonable efforts, at its own expense, and in good faith, to obtain prompt entry of a Sale Order;

C.      Provide, upon request, financial or other information, documentation, or certifications to Lender (including balance sheets and income statements), all in form satisfactory to Lender; and

D.      Promptly provide Lender with any information or documents reasonably requested by Lender.

Section 10.  **Maintenance of Lien Priorities**. This Agreement does not represent in any way new indebtedness.  It is the intention of the parties hereto that this Agreement shall not constitute a novation and shall in no way adversely affect or impair the lien priority of the Note, the Mortgage and the other Loan Documents. In the event this Agreement, or any portion hereof, or any of the instruments executed in connection herewith shall be construed, or shall operate, to affect the lien priority of the Note, the Mortgage or any of the other Loan Documents, then to the extent such instrument creates a charge upon any collateral for the Loan in excess of that contemplated and permitted hereby, and to the extent third parties acquiring an interest in such collateral for the Loan between the time of recording of such Loan Document and the date hereof are prejudiced hereby, if any, this Agreement shall be void and of no force and effect; provided however, that notwithstanding the foregoing, the parties hereto, as between themselves, shall be bound by all terms and conditions hereof until the Loan shall have been paid in full.

Section 11.  **Miscellaneous**.

A.      Enforceability of Documents. Except as expressly modified herein, the terms of the Note and the other Loan Documents remain in full force and effect in accordance with their respective terms and conditions, are in no manner impaired hereby and are hereby reaffirmed by all of the parties. Each Loan Party acknowledges the continuing validity and enforceability of the Note and the other Loan Documents and each Loan Party's indebtedness to Lender under the Note, the other Loan Documents and this Agreement.

B.      Reaffirmation. Each Loan Party hereby reaffirms the Note and the other Loan Documents, and each Loan Party's obligations and liabilities to Lender thereunder, and hereby warrants to Lender that until Lender's receipt of the Settlement Payment in accordance with the terms of this Agreement, no Loan Party has any defense or counterclaim whatsoever to any action or proceeding that may be brought to enforce Lender's rights and remedies under the Note, the other Loan Documents, or this Agreement.

      C.    <u>Waivers</u>. Each Loan Party acknowledges and agrees that no act or failure to act on the part of Lender heretofore shall constitute a waiver by Lender of any right it may otherwise have under the Note or the other Loan Documents and the agreement by Lender to the provisions of this Agreement and to the documents executed in connection herewith shall constitute a waiver only to the extent specifically provided for by this Agreement and that any waiver so specifically provided for by this Agreement shall be strictly construed so as to limit its application and shall not be applicable beyond the specific circumstances to which it is specifically made applicable and shall not be applicable to any similar circumstances that may hereafter arise or of which Lender did not at the time of execution of this Agreement have actual knowledge, even if the terms of such provision might otherwise make it appear to be so applicable. To the extent set forth in the Note and the other Loan Documents, each Loan Party waives their respective rights to (i) a trial by jury, and (ii) any punitive or special damages.

      D.    <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between the parties hereto and supersedes all prior agreements and understandings of the parties with respect to the matters set forth in this Agreement.

      E.    <u>Counterparts</u>. This Agreement may be executed by the parties hereto in any number of counterparts, each of which when so executed and delivered shall be an original and all of which together shall constitute one agreement.

      F.    <u>Governing Law, Jurisdiction, and Waiver of Jury Trial</u>.

          (a)    This Agreement has been delivered and accepted, and will be deemed to be made in, the State of New York. This Agreement will be interpreted and the rights and liabilities of the parties determined in accordance with the laws of the State of New York, excluding its conflict of laws rules.

          (b)    Each Loan Party hereby irrevocably consents to the jurisdiction of the Bankruptcy Court and any state or federal court in any county or judicial district in the State of New York for any and all actions, suits, or proceedings arising in whole or in part out of, related to, based upon, or in connection with this Agreement or the subject matter hereof, provided that nothing contained in this Agreement will prevent the Lender from bringing any action, enforcing any award or judgment, or exercising any rights against any Loan Party individually, against any security or against any property of any Loan Party within any other county, state, or other foreign or domestic jurisdiction. Each Loan Party acknowledges and agrees that the venue provided above is the most convenient forum for the parties to this Agreement. Each Loan Party waives any objection to venue and any objection based on a more convenient forum in any action instituted under this Agreement.

          (c)    To the extent not prohibited by applicable law that cannot be waived, each Party hereby waives, and covenants that it will not assert (whether as plaintiff, defendant, or otherwise), any right to trial by jury in any forum in respect of any issue, claim, demand, action, or cause of action arising in

whole or in part under, related to, based on or in connection with this Agreement or the subject matter hereof, whether now existing or hereafter arising and whether sounding in tort or contract or otherwise.

G. <u>Assignability</u>. Lender shall be permitted to assign or transfer its rights under the Note, the other Loan Documents, and this Agreement to any third-party without the prior consent of any Loan Party.

H. <u>Postponement of Subrogation</u>. Until the Settlement Payment has indefeasibly occurred in full, each Loan Party postpones and subordinates in favor of the Lender any and all rights which any Loan Party may have to (a) assert any claim against any other Loan Party based on subrogation rights with respect to payments made hereunder, and (b) any realization on any property of one another, including participation in any marshalling of one another's assets.

I. <u>Survival</u>. The representations and warranties contained herein survive the execution and delivery of the Agreement.

J. <u>No Waiver.</u>  Failure or delay by any Party to enforce any rights or remedies provided in this Agreement shall not be deemed a waiver of those rights.

K. <u>Attorney's Fees</u>. If any Party commences any action against any other Party with respect to the enforcement or interpretation of this Agreement, then the prevailing party in such action shall be entitled to an award of its costs of litigation, including reasonable attorney's fees.

L. <u>Mutual Cooperation.</u>  All Parties agree to cooperate fully and execute any and all supplemental documents and to take all additional actions which may be necessary or appropriate to give full force and effect to the basic terms and intent of this Agreement.

[*remainder of page intentionally blank*]

IN WITNESS WHEREOF, the parties have executed this Agreement in counterparts as of the first date written above.

**BORROWER:** **SUFFERN PARTNERS LLC**,
a New York limited liability company

By: GoldmanRx, Inc., a New York corporation, its sole member

By: */s/ Isaac Lefkowitz*
Name: Isaac Lefkowitz
Its: President

**NORTH 14TH STREET REALTY ASSOCIATES LLC**,
a New York limited liability company

By: */s/ Goldie Reisman*
Goldie Reisman, Managing Member

**PLEDGOR:** **GOLDMANRX, INC.**,
a New York corporation

By: */s/ Isaac Lefkowitz*
Name: Isaac Lefkowitz
Its: President

*/s/ Mozes Reisman*
**MOZES REISMAN**, an individual

**GUARANTOR:**

*/s/ Goldie Reisman*
**GOLDIE REISMAN**, an individual

**RSOM:** **RSOM CORP.**,
a New York corporation

By: */s/ Goldie Reisman*
Goldie Reisman, President

*[remainder intentionally blank; signatures continue on next page]*

9

**LENDER:**    **CPIF LENDING, LLC**,
a Washington limited liability company

By: CPIF Holdings, LLC, its sole member

   By: Columbia Pacific Advisors, LLC, its manager

      By: */s/ Brad Shain*
      Name: Brad Shain
      Title: Manager