LOCKE LORD, LLP  
Brookfield Place  
200 Vesey Street, 20th Floor  
New York, New York 10281  
Telephone: (212) 415-8509  
Donald E. Frechette, Esq.  
Casey Howard, Esq.  
Shalom Jacob, Esq.  
Alan H. Katz, Esq.  
*Attorneys for RS Old Mills RD, LLC*

Hearing Date: September 2, 2021, 2:00 p.m. EDT  
Responses Due: August 26, 2021

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) ) Chapter 11 |
| SUFFERN PARTNERS LLC, | ) ) Case No. 21-22280 (SHL) |
| Debtor. | ) ) ) |

**MOTION TO CONVERT TO CHAPTER 7**

TO: THE HONORABLE SEAN H. LANE  
UNITED STATES BANKRUPTCY JUDGE

RS Old Mills RD, LLC ("***RD***"), by and through its undersigned attorneys, files this motion to convert the Debtor's Chapter 11 case to a Chapter 7 case pursuant to § 1112(b) of the Bankruptcy Code. In support hereof, RD respectfully shows the Court as follows:

**PRELIMINARY STATEMENT**

1. On May 16, 2021, Suffern Partners, LLC ("***Debtor***") commenced the above-captioned Chapter 11 bankruptcy case. According to the Declaration of Isaac Lefkowitz Pursuant to Local Bankruptcy Rule 1007-2 filed the next day, the Debtor had been formed in 2017 to acquire the commercial property located at 25 Old Mill Road, Town of Ramapo, Village of Suffern, and 19 Hermion Road, Village of Montebello, Suffern, New York (the "***Property***").

95084083v.4

[ECF 3, ¶ 2.] As the Declaration further states, the Property was generating no income, and the bankruptcy case was commenced so that the Property could be expeditiously sold and the Debtor could then be liquidated.[1] [*Id.*, ¶¶ 42, 47.]

2.      Since the Debtor commenced the bankruptcy case, it has been a debtor-in-possession pursuant to Bankruptcy Code § 1107. No trustee, examiner or committee of creditors has been appointed. RD does not know why a creditors committee has not been appointed; to its knowledge, it was not approached by the United States Trustee about serving on a creditors committee.[2]

3.      According to the Debtor's counsel, the sale of the Property closed on July 15, 2021, and counsel is holding the net sale proceeds in the amount of $8,908,978.40. The Debtor has submitted a plan of liquidation.

4.      The Debtor's only other significant asset appears to be a $4,850,000.00 claim against North 14th Street Realty Associates, LLC ("***North 14th Street***") for monies advanced. [ECF 1, Schedule A/B, item 75.] At the time of the 2017 closing, the Debtor and North 14th Street were affiliates. North 14th Street was a co-borrower on the loan obtained to finance the Debtor's acquisition of the Property and it mortgaged its own property to secure that loan. Thus, the payoff made to CPIF Lending LLC in connection with the recent sale of the Property, on

---

[1] In answering question (1), "Gross revenue from business" of the Debtor's Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy, asking for the gross revenue from the Debtor's business, the Debtor stated "none." [ECF 1, p. 22.]

[2] The Bankruptcy Code provides that the United States Trustee "shall" appoint a committee of creditors holding unsecured claims in a case such as this, 11 U.S.C. § 1102(a)(1). The Debtor did not include RD's claim on the Debtor's Official Form 204 (20 largest unsecured claims), even though the Debtor was aware that RD's claim is the largest unsecured claim in the case. That the Debtor disputes RD's claim and it may not be liquidated is no reason not to include it, as shown by the Debtor's inclusion of the unliquidated, disputed claims of Old Republic National Title Insurance Company and the Town of Ramapo and the disputed claims of ATC Group Services LLC, Orange & Rockland Utilities, Inc. and Red Hawk Fire & Security, all of which are for amounts much smaller than the amount of RD's claim.

information and belief, also benefitted North 14th Street. It would appear that the Debtor has not been compensated for providing this benefit.

5. When asked at the June 24, 2021 meeting of creditors about the scheduled claim against North 14th Street, Mr. Lefkowitz testified that monies were advanced in connection with the Debtor's purchase of the Property, but he was uncertain whether North 14th Street owed the Debtor or the Debtor owed North 14th Street.  When asked whether either would be filing a claim against the other, Mr. Lefkowitz testified, "Neither." [Transcript of Meeting of Creditors, 6/24/2021, at pp. 15-17.][3]  However, as stated above, it seems that the Debtor has not been paid for this benefit provided to North 14th Street, an affiliate.  The Debtor's proposed plan of liquidation and its proposed disclosure statement do not provide any information about this claim or any other or whether the Debtor intends to pursue any claims for the benefit of its creditors.

6. Additionally, for approximately 1.5 years prior to commencement of this bankruptcy case, it appears that the Debtor may have been financed by DG Realty Management, LLC ("**DG Realty**"), which seems to be an affiliate of the Debtor and Mr. Lefkowitz.  DG Realty filed a proof of claim seeking $5,066,834.03 in principal and interest, in which it appears to allege that it advanced a total of $4,129,425.93 to itself, to DG's principal, to counsel representing the Debtor and to third parties, by individual advances ranging into hundreds of thousands of dollars.  At the meeting of creditors, Mr. Lefkowitz, who described these amounts as charges made by DG Realty on its credit card, made clear that the Debtor has no intention of objecting to or otherwise investigating this insider claim.

7. Furthermore, Hahn & Hessen, LLP and Thompson Coburn Hahn Hessen, LLP, successive special counsel to the Debtor, have filed proofs of claim which say that each of them

---

[3] See Exhibit A to Declaration of Alan H. Katz submitted in support of this Motion.

"anticipates making a post-petition claim for substantial contribution to a plan." [Attachment to Claim 5, filed 6/9/2021; Attachment to Amended Claim 5, filed 7/23/2021.] Bankruptcy Code § 503(b) does not appear to provide for substantial contribution claims by a debtor or its counsel. And although special counsel's substantial contribution claims against the estate would appear to constitute an "interest adverse … to the estate with respect to the matter on which such attorney is to be employed" [Bankruptcy Code § 327(e)], counsel's intention to make such claims was not disclosed to the Court in the Debtor's application for an order authorizing the employment of Hahn & Hessen, LLC [ECF 10, filed 5/18/2021], the amended affidavit of Stephen J. Grable in support of such application [ECF 27; filed 6/3/201] or the Debtor's application for an order authorizing the employment of Thompson Coburn Hahn Hessen, LLP [ECF 81, filed 7/6/2021]. The Debtor's proposed disclosure statement does not address its counsel's anticipated substantial contribution claims. The Debtor has not said whether it will resist such claims nor what impact such claims may have on distributions to creditors.

8. The Property has been sold; the Debtor has no revenue or business to operate; there is no prospect of rehabilitation; and the Debtor's Chapter 11 liquidation efforts appear to exist principally to benefit the Debtor's insiders and counsel. The Debtor is incurring fees of four (4) law firms (one on a contingency fee basis) and will incur substantial U.S. Trustee fees.

9. Cause exists to convert this Chapter 11 case to one under Chapter 7 or dismiss it. Of these, conversion to Chapter 7 would be in the best interests of creditors and the estate. Accordingly, RD has filed this Motion.

10. Additionally, as stated above, a creditors committee has not been appointed. Without a creditors committee, there is no independent fiduciary guarding the creditors' interest. The absence of a creditors committee makes conversion to Chapter 7 all the more compelling.

## SUMMARY OF ARGUMENT

11. This Motion should be granted as a matter of law pursuant to § 1112(b)(4), as there is cause to convert based on a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" and conversion, not dismissal, would be in the best interests of creditors and the estate. [11 U.S.C. § 1112(b)(1), (4)(A).] Conversion to Chapter 7 would allow an independent fiduciary to administer these cases, investigate, prosecute and defend any claims and liquidate and distribute the assets in a fair and impartial manner.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this bankruptcy case arising under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532, pursuant to 28 U.S.C. §§ 157(b) and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

13. Venue for the Debtor's bankruptcy case is proper in this District under 28 U.S.C. § 1408.

14. The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105 and 1112(b).

## THE BANKRUPTCY CASE

15. On May 16, 2021, the Debtor filed voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

16. Debtor remains in possession of its properties as debtor-in-possession pursuant to Code § 1107. No trustee, examiner or committee of creditors has been appointed.

95084083v.4

## ARGUMENT

17. Under the present circumstances, it is in the best interests of the Debtor's creditors and estate to convert this Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code. Although the Debtor projects that liquidation under its proposed plan of liquidation will provide a 100% return to creditors, that projection is dependent on RD's and Continental Kosher Catering's multimillion dollar claims both being disallowed in their entireties. Liquidation under Chapter 7 will more likely than not yield a greater amount available for distribution to the creditors of the Debtor's bankruptcy estates than will the current Chapter 11 case. RD believes the estate may have substantial claims against the Debtor's insiders and objections to claims made by insiders that the Debtor appears unlikely to pursue. There is no creditors committee that might pursue such matters. A Chapter 7 trustee would impartially investigate and pursue such matters for the benefit of the estate and its creditors.

18. Section 1112(b) of the Bankruptcy Code provides in relevant part that a court "shall" convert a Chapter 11 case, "for cause," upon the request of a party in interest:[4]

> [O]n request of a party in interest, and after notice and hearing, **the court shall convert a case under this chapter to a case under chapter 7** or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

---

[4] RD is a party in interest with standing to bring this Motion, notwithstanding that the Debtor disputes its claim. See *In re East Coast Airways Ltd.*, 146 B.R. 325, 335 (Bankr. E.D.N.Y. 1992):

> The Debtor asserts that DOT lacks standing to bring the motion to convert this Chapter 11 case. This contention is without merit. DOT was scheduled as a creditor by the Debtor itself, albeit a disputed one. 11 U.S.C. § 101(10) (A) defines a creditor to mean an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(5)(A) defines claim to mean "right to payment whether or not such right is ... disputed." 11 U.S.C. § 1109(b) states that "a party in interest, including ... a creditor ... may appear and be heard on any issue in a case under this chapter." DOT has filed a claim for over $300,000, to which East Coast has never objected; it has standing to make this motion.

*See also In re HBA East, Inc.*, 87 B.R. 248, 262-63 (Bankr. E.D.N.Y. 1988) (same concerning motion to dismiss Chapter 11 case).

6

95084083v.4

11 U.S.C. § 1112(b) (emphasis added).

19. Prior to the 2005 amendments to the Bankruptcy Code, section 1112(b) contained the language "may convert" as opposed to the "shall convert" language that now appears in section 1112(b). One of the courts directly addressing this change to section 1112(b) of the Bankruptcy Code observed:

> This change diminishes the discretion the bankruptcy courts have in conversions to Chapter 11. If cause for dismissal or conversion to Chapter 7 exists discretion not to dismiss or convert is limited to those instances in which the court makes specific findings that unusual circumstances establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, …. Once cause is established under § 1112, the courts in our circuit are counseled to determine which alternative, dismissal or conversion, best serves the interests of the creditors and of the estate.

*In re Broad Creek Edgewater, LP,* 371 B.R. 752, 759 (Bankr. D.S.C. 2007) (internal quotation marks deleted). *See also In re Gateway Access Solutions, Inc.,* 374 B.R. 556, 560 (Bankr. M.D. Pa. 2007).

20. As noted in the text quoted above the bankruptcy courts once had discretion not to dismiss or convert where the court makes specific findings that unusual circumstances establish that the requested conversion or dismissal is not in the best interests of creditors and the estate. However, the 2010 amendment to section 1112(b) limited that discretion to instances where the cause for converting to Chapter 7 or dismissing the case includes an act or omission of the debtor other than under section 1112(b)(4)(A).

21. This Motion contends that cause for conversion or dismissal exist for the grounds stated in section 1112(b)(4)(A): "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." Upon a showing of that

7

cause, this Court must either convert the Debtor's Chapter 11 case to Chapter 7 or dismiss the Debtor's Chapter 11 case, whichever of those two options the Court determines to be in the best interests of creditors and the estate. The discretion not to convert or dismiss would not be available to the Court.[5]

### *Substantial or Continuing Loss to and Diminution of the Estate and Absence of Reasonable Likelihood of Rehabilitation Constitute Cause for Conversion or Dismissal*

22. Conversion is warranted because there is a continuing loss to or diminution of the Debtor's estate and there is not a reasonable likelihood of rehabilitation. 11 U.S.C. § 1112(b)(4)(A).

23. To satisfy the first prong of § 1112(b)(4)(A), the "substantial or continuing loss to or diminution of the estate," a moving party must "establish both the continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation." *In re The 1031 Tax Group, LLC*, 374 B.R. 78, 93 (Bankr. S.D.N.Y. 2007). It is sufficient to demonstrate that there has been "negative cash flow after the bankruptcy case [was] commenced." *In re Taub,* 427 B.R. 208, 231 (Bankr. E.D.N.Y. 2010). *See also Loop Corp v. U.S. Trustee,* 379 F.3d 511, 515-516 (8th Cir. 2004) ("Under the interpretation of § 1112(b)(1) consistently used in bankruptcy courts, this negative cash flow situation alone is sufficient to establish 'continuing loss to or diminution of the estate.'").

24. There is no longer any operating business here. The Debtor has sold its only operating asset and has ceased operations. Although the estate may need to liquidate certain

---

[5] In any event, that there are no unusual circumstances here that might establish that converting or dismissing the case is not in the best interests of creditors and the estate, even if the Court had discretion not to convert or dismiss on that basis. "[T]he word 'unusual' contemplates facts that are not common to chapter 11 cases generally." 7 Collier on Bankruptcy ¶ 1112.05[2] (footnote omitted). There is nothing unusual here. Moreover, since cause to convert or dismiss exists, the burden would shift to the respondent to demonstrate by evidence the unusual circumstances. *Id.* "A determination of the existence of unusual circumstances is necessarily fact intensive." *Id.*

assets and to convert them to cash, the process of doing so involves only expense, not the creation of new assets. As the court held in *Loop*, in the context of a debtor who has ceased business operations and liquidated virtually all of its assets, any negative cash flow – including ongoing administrative expenses – may be enough to show "a substantial or continuing loss to or diminution of the estate." *See Loop,* 379 F.3d at 515-516; *In re Lyons Transp. Lines, Inc.,* 123 B.R. 526, 531 (Bankr. W.D. Pa. 1991); *In re White Plains Road, Inc.,* 28 B.R. 515, 518 (Bankr. S.D.N.Y. 1983). The estate only needs to be suffering "some diminution in value" for the test to be met. *ABEPP Acquisition Corp.,* 191 B.R. 365, 367 (Bankr. N.D. Ohio 1996).

25. The ongoing administrative expense of the Chapter 11 professionals in this Chapter 11 case constitutes "diminution of the estate" sufficient to satisfy the "continuing loss or diminution in value" test. *See Lyons Transp.,* 123 B.R. at 531. While it is true that administrative expenses will also be incurred if the cases are converted, "[c]hapter 7 cases generally have lower administrative expenses" than Chapter 11 cases. *Gateway Access Solutions,* 374 B.R. at 568. The administrative expenses of a Chapter 7 trustee is likely to be less than the combined expenses of the Debtor's professionals. Further, while the administrative expenses of a Chapter 7 trustee are always subject to the Court's review and approval, it appears that under the proposed plan of liquidation, fees incurred subsequent to conversion may be paid without Court approval. Additionally, by converting this case to Chapter 7 now, the estate can avoid the expense of the plan confirmation process, which may be contested and may not be successful. *Loop,* 379 F.3d at 518 (noting that "time and resources would be wasted during a confirmation process that may never even be successful" and "[c]onversion to Chapter 7 . . . would eliminate the expenses associated with confirmation of a plan . . ."). Finally, even if the administrative expenses incurred under Chapter 7 exceed those

9

that would be incurred under Chapter 11, these costs are substantially outweighed by the detriment to the estates if the Debtor and its professionals remain in possession and the claims against the Debtor's insiders are not adequately investigated and pursued.  And although an creditors committee, if appointed, could look out for the creditors' interests, that protection would come at a substantial cost.

26. The second prong of § 1112(b)(4)(A) requires the "absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A).  This test "requires a reasonable likelihood of 'rehabilitation,' not 'reorganization.' Thus, the standard under section 1112(b)(4)(A) is not the technical one of whether the debtor can confirm a plan, but, rather, whether the debtor's business prospects justify continuance of the reorganization effort." 7 Collier on Bankruptcy ¶ 1112.04[6][a][ii].

27. The term "rehabilitation" as used in this section means "to put back in good condition; re-establish on a firm, sound basis." *ABEPP Acquisition Corp.,* 191 B.R. at 368 (citation omitted). *See also In re Kanterman*, 88 B.R. 26, 29 (S.D.N.Y. 1988); *In re V Cos.,* 274 B.R. 721, 725 (Bankr. N.D. Ohio 2002). The word "rehabilitation" means the ability to reestablish a viable operating business. *See Loop*, 379 F.3d at 516 ("Courts have consistently understood 'rehabilitation' to refer to the debtor's ability to restore the viability of its business"). Courts in this district have consistently agreed with this interpretation of the word "rehabilitation" as used in section 1112(b)(4)(A).  *See, e.g., In re Sillerman*, 605 B.R. 631, 656 (Bankr. S.D.N.Y.  2019); *In re East 81st, LLC*, 2014 WL 4548551, No. 13-13685 (Bankr. S.D.N.Y. 3/17/2014), at *6; *In re BH S & B Holdings, LLC*, 439 B.R. 342,  347 (Bankr. S.D.N.Y. 2010); *In re AdBrite Corp.*, 290 B.R. 209, 216 (Bankr. S.D.N.Y. 2003)

10

(Rehabilitation "signifies that the debtor will be reestablished on a secured financial basis, which implies establishing a cash flow from which its current obligations can be met.").

28. The "ability to confirm a liquidating plan does not demonstrate a likelihood of rehabilitation." *In re East 81st, LLC*, 2014 WL 4548551, No. 13-13685 (Bankr. S.D.N.Y. 3/17/2014). The Debtor's "intention to liquidate (rather than rehabilitate), demonstrates that there is no likelihood of rehabilitation." *In re BH S & B Holdings*, 439 B.R. at 347. "Rehabilitation … may not include liquidation." *In re Ledges Apts.,* 58 B.R. 84, 87 (Bankr. E.D. Va. 1986).

29. That the Debtor might be legally entitled to file a liquidating plan does not mean that the Debtor have a "reasonable likelihood of rehabilitation" for the purpose of § 1112(b)(4)(A). Courts have consistently held that liquidation does not equate to the "rehabilitation" of the debtor contemplated by Chapter 11. *See, e.g., Loop,* 379 F.3d at 516 ("Because the debtors here intended to liquidate their assets rather than restore their business operations, they had no reasonable likelihood of rehabilitation."); *ABEPP Acquisition,* 191 B.R. at 368 (debtor's intention to liquidate was one of the reasons the court converted the bankruptcy case); *In re Jeanette Corp.,* 85 B.R. 319, 343-44 (W.D. Pa. 1988) (where debtors' assets other than a cause of action were sold during Chapter 11 case, proposed plan of liquidation was "not a plan for rehabilitation of the [d]ebtor"), *vacated on other grounds by Moody v. Simmons,* 858 F.2d 137 (3d Cir. 1988); *In re Natrl Plants and Lands Mgmt. Co., Ltd.*, 68 B.R. 394, 396 (Bankr. S.D.N.Y. 1986) (conversion of Chapter 11 case to Chapter 7 is proper where, *inter alia,* debtor is experiencing $60,000 loss per month and has filed liquidating Chapter 11 plan).

11

30. The Debtor will not be put back in good condition, established on a firm, sound basis or reestablished as a viable operating business. The Debtor will be liquidated. There is no "reasonable likelihood of rehabilitation." Thus, cause exists under Section 1112(b)(4)(A).

### *Conversion to Chapter 7, Not Dismissal, is in the Best Interests of the Creditors and the Estate*

31. Section 1112(b)(1) provides that once cause has been found, the Court "shall" convert the case to one under Chapter 7 or dismiss the case, whichever is in the best interests of the creditors and the estate. Here, conversion to Chapter 7 is in the best interests of the creditors and the estate.

32. Should the case be dismissed now, the Debtor would have almost $9,000,000.00, no duty to collect any amounts that may be due from affiliates or others, and would be able to decide which creditors it will pay or that it will pay none of them. Creditors might have to resort to litigation against the Debtor and litigation to recover avoidable transfers. Creditors might not be able to collect debts owed to the Debtor.

33. On the other hand, liquidation by a Chapter 7 trustee would provide an independent fiduciary with power to collect assets and to increase the estate by recovering avoidable transfers and would result in a pro-rata distribution to creditors holding allowed claims. *See In re Natrl Plants*, 68 B.R. at 396) (conversion appropriate where there was "a question as to whether the debtor would be impartially motivated to collect the amounts due from its affiliates and to determine whether or not preferential or otherwise avoidable transfers had been made to these affiliates or to its principal shareholder"); *In re Graf Bros., Inc.,* 19 B.R. 269, 270 (Bankr. D. Me. 1982) ("Liquidation by a debtor-in-possession should not be permitted where there may be a conflict of interest between the debtor and those with whom the

debtor is dealing during the liquidation phase."). No independent trustee, examiner or creditors' committee has been appointed. Conversion of this case will allow an independent fiduciary (the Chapter 7 trustee) to investigate and pursue claims and objections and potentially increase the estate and reduce claims against it. *See In re Mitan*, 573 F.3d 237, 247 (6th Cir. 2009) (finding decision to convert bankruptcy case appropriate where "more investigation [was] necessary to uncover the debtor's potential hidden assets").

34.   Conversion to Chapter 7, not dismissal, is in the best interests of the creditors and the estate.

35.   Moreover, dismissal would not be just and equitable. Only the Debtor would benefit from dismissal. The Debtor's estate is subject to the jurisdiction of this Court because the Debtor invoked such jurisdiction so that it could speed the sale of the Property. The sale has closed and the Debtor is holding the net proceeds. The Debtor has accomplished its objective, but as of now there has been no benefit to creditors. The Debtor's estate should remain under this Court's jurisdiction, in Chapter 7, for the benefit of the creditors.

36.   RD submits that it has met it burden of proving cause to convert or dismiss this case, because there is a substantial or continuing loss to or diminution of the estate and no likelihood of rehabilitation. Further, RD has demonstrated that conversion, not dismissal, is in the best interest of the estate and its creditors.

## CONCLUSION

For the foregoing reasons, RD respectfully requests that this Honorable Court enter an order converting this case from Chapter 11 to Chapter 7 and grant such other and further relief as the Court deems just and proper.

95084083v.4

Dated: August 11, 2021
New York, New York

*/s/ Alan H. Katz*
Donald E. Frechette
Casey Howard
Shalom Jacob
Alan H. Katz
LOCKE LORD, LLP
Brookfield Place
200 Vesey Street, 20th Floor
New York, New York 10281
Telephone: (212) 415-8509
Facsimile: (212) 812-8380
donald.frechette@lockelord.com
choward@lockelord.com
sjacob@lockelord.com
akatz@lockelord.com

95084083v.4