DAVIDOFF HUTCHER & CITRON LLP
*Attorneys for the Debtor*
120 Bloomingdale Road, Suite 100
White Plains, New York 10605
(914) 381-7400
Jonathan S. Pasternak, Esq.
Robert L. Rattet, Esq.

*Hearing Date: September 30, 2021*
*Hearing Time: 10:00 a.m.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

In Re:                                          Chapter 11

SUFFERN PARTNERS, LLC.                           Case No.: 21-22280 (SHL)

                                    Debtor.
--------------------------------------------------------X

### DEBTOR'S MOTION OBJECTING TO CLAIMS OF RS OLD MILLS RD LLC, OR, ALTERNATIVELY, FOR ESTIMATION OF SUCH CLAIMS AT ZERO DOLLARS FOR PURPOSES OF VOTING ON AND DISTRIBUTIONS PURSUANT TO DEBTOR'S CHAPTER 11 PLAN OF LIQUIDATION <u>(CLAIM NOS. 18 & 19)</u>

**TO:    THE HON. SEAN H. LANE,**
**UNITED STATES BANKRUPTCY JUDGE**

Debtor Suffern Partners LLC ("Debtor"), by its undersigned attorneys, respectfully submits this Motion pursuant to Bankruptcy Code § 502 and Federal Rules of Bankruptcy Procedure 3018(a), for an Order: (a) disallowing and expunging Claim Nos. 18 & 19 filed by alleged creditor RS Old Mills Rd LLC ("RS2"); or, alternatively, (b) valuing RS2's claims at zero dollars for purposes of voting on and distributions pursuant to the Debtor's Chapter 11 Plan of Liquidation (the "Plan"); and (c) for such other and further relief in Debtor's favor as the Court deems just and proper.

### <u>PRELIMINARY STATEMENT</u>

1.      The time is now.  RS2 must (but cannot) proffer actual *evidence* that it is owed monies by Debtor.  Despite years of litigation, no such evidence has been identified or ever

proffered by RS2.  To the contrary, a mountain of documents, testimony from the attorneys involved, court findings – and even admissions of RS2's principal, Avrohom Kaufman – all demonstrate that RS2 has no viable claim against the Debtor's estate.  RS2 cannot meet its burden, and Claim Nos. 18 & 19 should therefore be disallowed and expunged in their entirety, with prejudice.

2.      Alternatively, RS2's claims should be estimated for all Plan and Chapter 11-related purposes at zero dollars.  The Debtor has diligently been pursuing the efficient administration of its estate, including the recently-proposed Plan, to be followed by distributions and an expedited and successful conclusion to this Chapter 11 proceeding.  In contrast, RS2 has demonstrated its intention to embroil the estate in wasteful litigation maneuvers that have no utility, instead seeking to manufacture delay, increase costs, and threaten to materially diminish distributions to the legitimate unsecured creditors.  RS2's conduct should finally be put to an end.  RS2's Claim Nos. 18 & 19 can be estimated at zero dollars, thereby enabling Plan voting and distributions to proceed without further delays.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(a) and 1334, and the Standing Order of Reference of the United States District Court for the Southern District of New York (Ward, Acting Ch. J.).

4.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue properly lies in this District pursuant to 28 U.S.C. §§ 1408-1409.

## NATURE AND PURPOSE OF MOTION

5.      On May 16, 2021 (the "Petition Date"), Debtor filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code and has continued as debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.  No committees, trustee, or examiner

have been appointed in the Chapter 11 case to date.

6.      The bar date for filing proofs of claim expired on July 26, 2021, the Debtor has preliminarily reviewed all filed proofs of claim, and on July 21, 2021, the Debtor filed the Plan which provides for distribution up to 100% of, *inter alia*, all allowed unsecured claims.

7.      In order to finalize the total amount of allowed claims and distributions under the Plan, Debtor requests that the Court consider this Motion (a) objecting to RS2's Claim Nos. 18 & 19, or, alternatively (b) estimating RS2's claims for Plan-voting and distribution purposes at zero dollars.  Copies of Claim Nos. 18 & 19 are attached as Exhibit 1.

**BACKGROUND AND RELEVANT FACTS**

**A.      Overview**

8.      RS2's Claim Nos. 18 & 19 purportedly seek to rescind its September 2017 transfer of certain real property to Debtor, or $30 million allegedly due to RS2 in connection with that transaction.   RS2's claims are without basis and wholly unsubstantiated.   Indeed, the only supporting "documentation" that RS2 submits in support is a copy of an unverified complaint that RS2 filed in the New York State Supreme Court.   The allegations therein are not evidence, and thus are insufficient to sustain RS2's Claim Nos. 18 & 19.   Additionally, there simply is no evidence to support RS2's Claim Nos. 18 & 19.   Despite multiple years of litigation in various forums, neither RS2 or its principal – nor any of their affiliates, related parties, strawmen or predecessors – have proffered any evidence that they are owed anything by the Debtor. The extensive history and supporting documentation, all of which compels disallowance of RS2's Claim Nos. 18 & 19, are detailed herein.

**B.      The RS Old Mill, LLC Bankruptcy**

9.      In November 2016, an entity named RS Old Mill, LLC ("RS1") executed an agreement to purchase from Novartis Corporation a 162-acre property located in Suffern and

3

Montebello, New York (the "Property") for $18 million. A copy of RS1's purchase agreement is attached as Exhibit 2. RS1's sole member and principal is an individual named Yehuda Salamon. *See* Ex. 2, p. 32.

10.    RS1 paid a $2.5 million deposit to Novartis and agreed to close on the $18 million purchase by February 2017. *See* Ex. 2, pp. 2, 4, 21. RS1 ultimately was unable to secure the additional $15.5 million needed to timely close, and then filed a petition for Chapter 11 protection in this Court on February 13, 2017. That proceeding was assigned to the Honorable Robert D. Drain. *See* Case No. 17-22218 (RDD) (the "RS1 Bankruptcy").

11.    RS1's motion to assume the Novartis purchase agreement was granted, with the purchase ordered to close no later than August 17, 2017. A copy of the Order is attached as Exhibit 3.

12.    RS1 again was unable to timely secure the needed financing, and Novartis then sought forfeiture of RS1's $2.5 million deposit or to pursue additional damages against RS1. A copy of the Novartis forfeiture application is attached as Exhibit 4.

13.    To stave off immediate contractual forfeiture of the $2.5 million deposit, RS1's principal – Yehuda Salamon – identified and implemented a simultaneous acquisition and sale of the Property that would enable the needed financing to be obtained. Specifically: (1) RS1 would purchase the Property from Novartis for $18 million; (2) RS1 would simultaneously transfer the Property to a newly-created strawman entity – RS2 – with Yehuda Salamon's brother-in-law Avrohom Kaufman installed as the sole member; (3) RS2 would simultaneously transfer the Property to Debtor; (4) Debtor would secure mortgage financing from a third-party lender, CPIF Lending LLC ("CPIF"); and (5) CPIF's loan to Debtor would pay for each leg of the transaction, *i.e.*, Debtor's loan would pay the balance of $15.5 million due to Novartis, together with all other debts, obligations, fees, transaction costs, and taxes arising in connection with the transaction.

The collapsed transaction was explained in detail during the RS1 Bankruptcy by David Fleischmann, Esq., counsel to Debtor for purposes of the September 2017 purchase of the Property. Additionally, the receipt and distribution of funds was further confirmed by Thomas Landrigan, Esq., who served as real estate counsel for RS1 and its strawman RS2 in connection with the transaction. Copies of an affidavit of Mr. Fleischmann, the transcript of Mr. Fleischmann's testimony, and an affidavit of Mr. Landrigan, are respectively attached hereto as Exhibits 5, 6, and 7.

### C.    Funding and Closing on Debtor's Purchase of the Property

14.    In conjunction with the September 2017 transaction, Debtor negotiated and obtained a $33 million loan from CPIF to fund its purchase and anticipated development of the Property. *See* Ex. 5, ¶ 7. CPIF and Debtor selected Riverside Abstract, LLC ("Riverside") as the escrow agent for Debtor's purchase of the Property. *See* Ex. 5, ¶ 8, Ex. D (Escrow Agreement).

15.    The transaction closed on or about September 5, 2017, with Debtor's purchase monies fully funded and the proceeds then all distributed. A copy of Riverside's closing statement and the list of wire transfer confirmation numbers reflecting Riverside's receipt and distribution of Debtor's purchase monies is attached hereto as Exhibit 8.

16.    As detailed in Riverside's closing statement, CPIF transferred approximately $25.5 million to Riverside (with the remainder of Debtor's $33 million loan balance held back for lender fees, reserves, and other expenses). *See* Ex. 8, p. 2; Ex. 6, pp. 42:17-45:2.

| Incoming Funds | | |
|---|---|---|
| | $25,536,833.33 | LENDING, LLC INCOMING WIRE REF# 20170905B6B7261F00143709051550FT03 0000007595FROM: CPIF LENDING, LLC ABA: 121140399BANK: |
| | $2,100,000.00 | F & LOWY PLLC INCOMING WIRE REF# 20170905B6B7261F00148609051606FT03 0000007930FROM: TREFF & LOWY PLLC ABA: 026013576BANK: |
| | $2,100,000.00 | F & LOWY PLLC INCOMING WIRE REF# 20170905B6B7261F00148509051606FT03 0000007923FROM: TREFF & LOWY PLLC ABA: 026013576BANK: |
| | $2,100,000.00 | F & LOWY PLLC INCOMING WIRE REF# 20170905B6B7261F00148309051606FT03 0000007915FROM: TREFF & LOWY PLLC ABA: 026013576BANK: |
| | $2,100,000.00 | F & LOWY PLLC INCOMING WIRE REF# 20170905B6B7261F00142909051546FT03 0000007480FROM: TREFF & LOWY PLLC ABA: 026013576BANK: |
| | $2,100,000.00 | F & LOWY PLLC INCOMING WIRE REF# 20170905B6B7261F00148209051606FT03 0000007907FROM: TREFF & LOWY PLLC ABA: 026013576BANK: |
| | $2,000,000.00 | N GANZ INCOMING WIRE REF# 20170905B6B7261F00139809051531FT03 0000007065FROM: SIMON GANZ ABA: 011103093BANK: |
| | $38,036,833.33 | |

Riverside also received an additional $12.5 million that had been placed in escrow as a short-term loan to facilitate the transaction.  *See* Ex. 8, p. 2; Ex. 6, pp. 55:13-56:17.

| Incoming Funds | | |
|---|---|---|
| | $25,536,833.33 | LENDING, LLC INCOMING WIRE REF# 2017090586B7261F00143709051550FT03 0000007595FROM: CPIF LENDING, LLC ABA: 12114039BANK: |
| | $2,100,000.00 | F & LOWY PLLC INCOMING WIRE REF# 2017090586B7261F00148609051606FT03 0000007930FROM: TREFF & LOWY PLLC ABA: 026013576BANK: |
| | $2,100,000.00 | F & LOWY PLLC INCOMING WIRE REF# 2017090586B7261F00148509051606FT03 0000007923FROM: TREFF & LOWY PLLC ABA: 026013576BANK: |
| | $2,100,000.00 | F & LOWY PLLC INCOMING WIRE REF# 2017090586B7261F00148309051606FT03 0000007915FROM: TREFF & LOWY PLLC ABA: 026013576BANK: |
| | $2,100,000.00 | F & LOWY PLLC INCOMING WIRE REF# 2017090586B7261F00142909051546FT03 0000007480FROM: TREFF & LOWY PLLC ABA: 026013576BANK: |
| | $2,100,000.00 | F & LOWY PLLC INCOMING WIRE REF# 2017090586B7261F00148209051606FT03 0000007907FROM: TREFF & LOWY PLLC ABA: 026013576BANK: |
| | $2,000,000.00 | N GANZ INCOMING WIRE REF# 2017090586B7261F00139809051531FT03 0000007065FROM: SIMON GANZ ABA: 011103093BANK: |
| | $38,036,833.33 | |

17.    With all purchase monies delivered and received by Riverside as escrow agent, Riverside then made the requisite distributions to all parties to effectuate Debtor's purchase. The balance due and owing from RS1 to Novartis under the purchase agreement ($15,940,321.51) was delivered by Riverside to Novartis through its escrow agent, Commonwealth Land Title Insurance Company.  *See* Ex. 8, p. 2; Ex. 6, p. 53:6-22.

| Outgoing Funds | | |
|---|---|---|
| | $15,940,321.51 | Commonwealth Land Ti OUTGOING WIRE REF# 2017090686B7261F000367TO: Commonwealth Land Title ABA: 026009593BANK: BANK OF AMERICA, N.Y. ACCT# 1257075310 |
| | $13,763,840.88 | Cohen, LaBarbera and OUTGOING WIRE REF# 2017090686B7261F00115410: Cohen, LaBarbera and Landrigan LLP ABA: 221970443BANK: STERLING NATIONAL BANK ACCT# 914430 |
| | $4,858,054.29 | TD Bank OUTGOING WIRE REF# 2017090686B7261F000345TO: TD Bank ABA: 031101266BANK: TD BANK, NA ACCT# 9870123403 |
| | $687,838.21 | IM Insurance Brokera OUTGOING WIRE REF# 2017090686B7261F000762TO: IM Insurance Brokerage Inc. ABA: 021000021BANK: JPMORGAN CHASE BANK, NA ACCT# 969691161 |
| | $500,000.00 | Law Offices of David OUTGOING WIRE REF# 2017090686B7261F000361TO: Law Offices of David Fleischmann P ABA: 026009593BANK: BANK OF AMERICA, N.A., NY ACCT# 483046403806 |
| | $330,000.00 | WATERMARK ASSOCIATES OUTGOING WIRE REF# 2017090686B7261F000765TO: WATERMARK ASSOCIATES LLC ABA: 021000021BANK: JPMORGAN CHASE BANK, NA ACCT# 817933265 |
| | $125,000.00 | Cassin and Cassin LL OUTGOING WIRE REF# 2017090686B7261F000360TO: Cassin and Cassin LLP ABA: 321081669BANK: FIRST REPUBLIC BANK ACCT# 80001565531 |
| | $70,000.00 | Bridgewater Capital OUTGOING WIRE REF# 2017090686B7261F000764TO: Bridgewater Capital Partners LLC ABA: 021000021BANK: JPMORGAN CHASE BANK, NA ACCT# 221509039 |
| | $56,250.00 | Bridgewater Capital OUTGOING WIRE REF# 2017090686B7261F000763TO: Bridgewater Capital Partners LLC ABA: 021000021BANK: JPMORGAN CHASE BANK, NA ACCT# 221509039 |
| | $48,500.00 | Reiss Sheppe LLP OUTGOING WIRE REF# 2017090686B7261F000774TO: Reiss Sheppe LLP ABA: 021000021BANK: JPMORGAN CHASE BANK, NA ACCT# 0902024027 |
| | $40,000.00 | Law Offices of David OUTGOING WIRE REF# 2017090586B7261F000721TO: Law Offices of David Fleischmann P ABA: 026009593BANK: BANK OF AMERICA, N.A., NY ACCT# 483046403806 |
| | $25,000.00 | Law office of Shaul OUTGOING WIRE REF# 2017090586B7261F000723TO: Law office of Shaul C. Greenwald ABA: 026013576BANK: SIGNATURE BANK ACCT# 1501905697 |
| | $4,000.00 | Corporation Service OUTGOING WIRE REF# 2017090686B7261F000724TO: Corporation Service Company ABA: 031100088BANK: PNC BANK, NATIONAL ASSOCIATION ACCT# 560326005B |
| | $750.00 | KCM Clearing Account OUTGOING WIRE REF# 2017090686B7261F000472TO: KCM Clearing Account ABA: 041001039BANK: KEYBANK NATIONAL ASSOCIATION ACCT# 359554002101 |
| | $1,282,686.72 | Riverside Abstract *(Deducted the $56,250.00 included on final invoice that is also picked up on face of statement)* |
| | $149,298.72 | Riverside Abstract |
| | $97,500.00 | Riverside Abstract |
| | $750.00 | Alan Hirsch |
| | $400.00 | Elie Basch |
| | $390.00 | Vcorp Services, LLC |
| | $4,600.00 | Cullen and Dykman LL OUTGOING WIRE REF# 2017090786B7261F002087TO: Cullen and Dykman LLP ABA: 021000021BANK: JPMORGAN CHASE BANK, NA ACCT# 530931915 |
| | $15,891.48 | Recordings - Title Invoice RANY-27844 |
| | $38,001,071.81 | |

Riverside also distributed approximately $3.4 million in other costs and expenses, including taxes, closing agent fees, insurance fees, attorneys' fees, and other miscellaneous transaction costs. *See* Ex. 8, p.2; Ex. 6, pp. 46:7-52:24.

| Outgoing Funds | $15,940,321.51 | Commonwealth Land Ti OUTGOING WIRE REF# 20170906B6B7261F000367TO: Commonwealth Land Title ABA: 026009593BANK: BANK OF AMERICA, N.A., NY ACCT# 1257075310 |
| --- | --- | --- |
| | $13,763,840.88 | Cohen, LaBarbera and OUTGOING WIRE REF# 20170906B6B7261F0011154TO: Cohen, LaBarbera and Landrigan LLP ABA: 221970443BANK: STERLING NATIONAL BANK ACCT# 914430 |
| | $4,858,054.29 | TD Bank OUTGOING WIRE REF# 20170906B6B7261F000345TO: TD Bank ABA: 031101266BANK: TD BANK, NA ACCT# 9870123403 |
| | $687,838.21 | IM Insurance Brokera OUTGOING WIRE REF# 20170906B6B7261F000762TO: IM Insurance Brokerage Inc. ABA: 021000021BANK: JPMORGAN CHASE BANK, NA ACCT# 969691161 |
| | $500,000.00 | Law Offices of David OUTGOING WIRE REF# 20170906B6B7261F000361TO: Law Offices of David Fleischmann P ABA: 026009593BANK: BANK OF AMERICA, N.A., NY ACCT# 483046403806 |
| | $330,000.00 | WATERMARK ASSOCIATES OUTGOING WIRE REF# 20170906B6B7261F000765TO: WATERMARK ASSOCIATES LLC ABA: 021000021BANK: JPMORGAN CHASE BANK, NA ACCT# 817933265 |
| | $125,000.00 | Cassin and Cassin LL OUTGOING WIRE REF# 20170906B6B7261F000360TO: Cassin and Cassin LLP ABA: 321081669BANK: FIRST REPUBLIC BANK ACCT# 80001565531 |
| | $70,000.00 | Bridgewater Capital OUTGOING WIRE REF# 20170906B6B7261F000764TO: Bridgewater Capital Partners LLC ABA: 021000021BANK: JPMORGAN CHASE BANK, NA ACCT# 221509039 |
| | $56,250.00 | Bridgewater Capital OUTGOING WIRE REF# 20170906B6B7261F000763TO: Bridgewater Capital Partners LLC ABA: 021000021BANK: JPMORGAN CHASE BANK, NA ACCT# 221509039 |
| | $48,500.00 | Reiss Sheppe LLP OUTGOING WIRE REF# 20170906B6B7261F000774TO: Reiss Sheppe LLP ABA: 021000021BANK: JPMORGAN CHASE BANK, NA ACCT# 0902024027 |
| | $40,000.00 | Law Offices of David OUTGOING WIRE REF# 20170906B6B7261F000721TO: Law Offices of David Fleischmann P ABA: 026009593BANK: BANK OF AMERICA, N.A., NY ACCT# 483046403806 |
| | $25,000.00 | Law office of Shaul OUTGOING WIRE REF# 20170906B6B7261F000723TO: Law office of Shaul C. Greenwald ABA: 026013576BANK: SIGNATURE BANK ACCT# 1501905697 |
| | $4,000.00 | Corporation Service OUTGOING WIRE REF# 20170906B6B7261F000724TO: Corporation Service Company ABA: 031100089BANK: PNC BANK, NATIONAL ASSOCIATION ACCT# 5603260058 |
| | $750.00 | KCM Clearing Account OUTGOING WIRE REF# 20170906B6B7261F000722TO: KCM Clearing Account ABA: 041000103 9BANK: KEYBANK NATIONAL ASSOCIATION ACCT# 359954002101 |
| | $1,282,685.72 | Riverside Abstract (Deducted the $56,250.00 included on final invoice that is also picked up on face of statement) |
| | $149,298.72 | Riverside Abstract |
| | $97,500.00 | Riverside Abstract |
| | $750.00 | Alan Hirsch |
| | $400.00 | Elie Basch |
| | $390.00 | Vcorp Services, LLC |
| | $4,600.00 | Cullen and Dykman LL OUTGOING WIRE REF# 20170907B6B7261F002087TO: Cullen and Dykman LLP ABA: 021000021BANK: JPMORGAN CHASE BANK, NA ACCT# 530931915 |
| | $15,891.48 | Recordings - Title Invoice RANY-27844 |
| | $38,001,071.81 | |

Additionally, approximately $4.9 million was delivered by Riverside to TD Bank, to pay-off and permit replacement by assignment to CPIF of a new first-lien mortgage on certain real property located in Brooklyn, New York and held by North 14th Street Realty Associates LLC that Debtor had arranged to be pledged as additional collateral for its $33 million loan. See Ex. 5, Ex. B (Mortgage).

| Outgoing Funds | $15,940,321.51 | Commonwealth Land Ti OUTGOING WIRE REF# 20170906B6B7261F000367TO: Commonwealth Land Title ABA: 026009593BANK: BANK OF AMERICA, N.A., NY ACCT# 1257075310 |
| --- | --- | --- |
| | $13,763,840.88 | Cohen, LaBarbera and OUTGOING WIRE REF# 20170906B6B7261F0011154TO: Cohen, LaBarbera and Landrigan LLP ABA: 221970443BANK: STERLING NATIONAL BANK ACCT# 914430 |
| | $4,858,054.29 | TD Bank OUTGOING WIRE REF# 20170906B6B7261F000345TO: TD Bank ABA: 031101266BANK: TD BANK, NA ACCT# 9870123403 |
| | $687,838.21 | IM Insurance Brokera OUTGOING WIRE REF# 20170906B6B7261F000762TO: IM Insurance Brokerage Inc. ABA: 021000021BANK: JPMORGAN CHASE BANK, NA ACCT# 969691161 |
| | $500,000.00 | Law Offices of David OUTGOING WIRE REF# 20170906B6B7261F000361TO: Law Offices of David Fleischmann P ABA: 026009593BANK: BANK OF AMERICA, N.A., NY ACCT# 483046403806 |
| | $330,000.00 | WATERMARK ASSOCIATES OUTGOING WIRE REF# 20170906B6B7261F000765TO: WATERMARK ASSOCIATES LLC ABA: 021000021BANK: JPMORGAN CHASE BANK, NA ACCT# 817933265 |
| | $125,000.00 | Cassin and Cassin LL OUTGOING WIRE REF# 20170906B6B7261F000360TO: Cassin and Cassin LLP ABA: 321081669BANK: FIRST REPUBLIC BANK ACCT# 80001565531 |
| | $70,000.00 | Bridgewater Capital OUTGOING WIRE REF# 20170906B6B7261F000764TO: Bridgewater Capital Partners LLC ABA: 021000021BANK: JPMORGAN CHASE BANK, NA ACCT# 221509039 |
| | $56,250.00 | Bridgewater Capital OUTGOING WIRE REF# 20170906B6B7261F000763TO: Bridgewater Capital Partners LLC ABA: 021000021BANK: JPMORGAN CHASE BANK, NA ACCT# 221509039 |
| | $48,500.00 | Reiss Sheppe LLP OUTGOING WIRE REF# 20170906B6B7261F000774TO: Reiss Sheppe LLP ABA: 021000021BANK: JPMORGAN CHASE BANK, NA ACCT# 0902024027 |
| | $40,000.00 | Law Offices of David OUTGOING WIRE REF# 20170906B6B7261F000721TO: Law Offices of David Fleischmann P ABA: 026009593BANK: BANK OF AMERICA, N.A., NY ACCT# 483046403806 |
| | $25,000.00 | Law office of Shaul OUTGOING WIRE REF# 20170906B6B7261F000723TO: Law office of Shaul C. Greenwald ABA: 026013576BANK: SIGNATURE BANK ACCT# 1501905697 |
| | $4,000.00 | Corporation Service OUTGOING WIRE REF# 20170906B6B7261F000724TO: Corporation Service Company ABA: 031100089BANK: PNC BANK, NATIONAL ASSOCIATION ACCT# 5603260058 |
| | $750.00 | KCM Clearing Account OUTGOING WIRE REF# 20170906B6B7261F000722TO: KCM Clearing Account ABA: 041000103 9BANK: KEYBANK NATIONAL ASSOCIATION ACCT# 359954002101 |
| | $1,282,685.72 | Riverside Abstract (Deducted the $56,250.00 included on final invoice that is also picked up on face of statement) |
| | $149,298.72 | Riverside Abstract |
| | $97,500.00 | Riverside Abstract |
| | $750.00 | Alan Hirsch |
| | $400.00 | Elie Basch |
| | $390.00 | Vcorp Services, LLC |
| | $4,600.00 | Cullen and Dykman LL OUTGOING WIRE REF# 20170907B6B7261F002087TO: Cullen and Dykman LLP ABA: 021000021BANK: JPMORGAN CHASE BANK, NA ACCT# 530931915 |
| | $15,891.48 | Recordings - Title Invoice RANY-27844 |
| | $38,001,071.81 | |

Lastly, a total of $13,763,840.88 was delivered by Riverside to Thomas Landrigan, Esq., Cohen, LaBarbera & Landrigan, LLP, as real estate counsel and escrow agent for RS1 and its strawman RS2. See Ex. 8, p.2; Ex. 6, pp. 53:23-54:4.

| Outgoing Funds | | |
|---|---|---|
| | $15,940,321.51 | Commonwealth Land Ti OUTGOING WIRE REF# 2017090686B7261F000367TO: Commonwealth Land Title ABA: 026009593BANK: BANK OF AMERICA, N.A., NY ACCT# 1257075310 |
| | $13,763,840.88 | Cohen, LaBarbera and OUTGOING WIRE REF# 2017090686B72G1F00115 4TO: Cohen, LaBarbera and Landrigan LLP ABA: 221970443BANK: STERLING NATIONAL BANK ACCT# 914430 |
| | $4,858,054.29 | TD Bank OUTGOING WIRE REF# 2017090686B7261F000345TO: TD Bank ABA: 031101286BANK: TD BANK, NA ACCT# 9870123403 |
| | $687,838.21 | IM Insurance Brokera OUTGOING WIRE REF# 2017090686B7261F000762TO: IM Insurance Brokerage Inc. ABA: 021000021BANK: JPMORGAN CHASE BANK, NA ACCT# 569691161 |
| | $500,000.00 | Law Offices of David OUTGOING WIRE REF# 2017090686B7261F000361TO: Law Offices of David Fleischmann P ABA: 026009593BANK: BANK OF AMERICA, N.A., NY ACCT# 483046403806 |
| | $330,000.00 | WATERMARK ASSOCIATES OUTGOING WIRE REF# 2017090686B7261F000076TO: WATERMARK ASSOCIATES LLC ABA: 021000021BANK: JPMORGAN CHASE BANK, NA ACCT# 817933265 |
| | $125,000.00 | Cassin and Cassin LL OUTGOING WIRE REF# 2017090686B7261F000360TO: Cassin and Cassin LLP ABA: 321081669BANK: FIRST REPUBLIC BANK ACCT# 80001565531 |
| | $70,000.00 | Bridgewater Capital OUTGOING WIRE REF# 2017090686B7261F000764TO: Bridgewater Capital Partners LLC ABA: 021000021BANK: JPMORGAN CHASE BANK, NA ACCT# 221509039 |
| | $56,250.00 | Bridgewater Capital OUTGOING WIRE REF# 2017090686B7261F000763TO: Bridgewater Capital Partners LLC ABA: 021000021BANK: JPMORGAN CHASE BANK, NA ACCT# 221509039 |
| | $48,500.00 | Reiss Sheppe LLP OUTGOING WIRE REF# 2017090686B7261F000774TO: Reiss Sheppe LLP ABA: 021000021BANK: JPMORGAN CHASE BANK, NA ACCT# 0902024027 |
| | $40,000.00 | Law Offices of David OUTGOING WIRE REF# 2017090686B7261F000372TO: Law Offices of David Fleischmann P ABA: 026009593BANK: BANK OF AMERICA, N.A., NY ACCT# 483046403806 |
| | $25,000.00 | Law office of Shaul OUTGOING WIRE REF# 2017090686B7261F000723TO: Law office of Shaul C. Greenwald ABA: 026013576BANK: SIGNATURE BANK ACCT# 1501930697 |
| | $4,000.00 | Corporation Service OUTGOING WIRE REF# 2017090686B7261F000724TO: Corporation Service Company ABA: 031100089BANK: PNC BANK, NATIONAL ASSOCIATION ACCT# 5603260058 |
| | $750.00 | KCM Clearing Account OUTGOING WIRE REF# 2017090686B7261F000722TO: KCM Clearing Account ABA: 041001039BANK: KEYBANK NATIONAL ASSOCIATION ACCT# 359954002101 |
| | $1,282,686.72 | Riverside Abstract *(Deducted the $56,250.00 included on final invoice that is also picked up on face of statement)* |
| | $149,298.72 | Riverside Abstract |
| | $97,500.00 | Riverside Abstract |
| | $750.00 | Alan Hirsch |
| | $400.00 | Elie Basch |
| | $390.00 | Vcorp Services, LLC |
| | $4,600.00 | Cullen and Dykman LL OUTGOING WIRE REF# 2017090786B7261F002087TO: Cullen and Dykman LLP ABA: 021000021BANK: JPMORGAN CHASE BANK, NA ACCT# 530931915 |
| | $15,891.48 | Recordings - Title Invoice RANY-27844 |
| | $38,001,071.81 | |

As reflected above, the distribution and delivery of all such fund transfers are fully documented, including by their wire reference #, recipient bank name, recipient bank ABA #, and recipient bank account #.

18.     Receipt of all such funds is also fully documented.  Critical to RS2's Claim Nos. 18 & 19 now at issue, Thomas Landrigan, Esq. confirmed during the RS1 Bankruptcy by affidavit – together with copies of his firm's bank account statements – that he received the $13,763,840.88 transfer.  *See* Ex. 7, ¶ 3, Ex. A (Bank Statement).  Mr. Landrigan further confirmed that he subsequently distributed those monies at the direction of Yehuda Salamon, RS2, and their agents. *See, e.g.,* Ex. 7, ¶ 4.

19.     All parties involved in the September 2017 transaction received exactly what they intended and were entitled to receive, and accordingly, deeds and assignments to formally transfer the Property to Debtor were recorded as a matter of record:

(a) Novartis executed an assignment of deed on August 31, 2017 that transferred the Property to RS1, attached as Exhibit 9;

(b) RS1– by Yehuda Salamon, its managing member – executed a Bargain and Sale Deed as of September 5, 2017 that transferred the Property to its insider entity RS2, attached as Exhibit 10;

(c) RS2 – by Avrohom Kaufman, its managing member and the brother-in-law of

Yehuda Salamon – executed a Bargain and Sale Deed also as of September 5,

2017 that transferred the Property to Debtor, attached as Exhibit 11.

20.    As Avrohom Kaufman admitted, RS2's role in the transaction was merely as an

intermediary, to help Yehuda Salamon "arrange financing" for the Property and for his "ultimate

benefit."  That "ultimate benefit" was avoiding an immediate forfeiture of $2.5 million or other

damages that was all but certain after RS1's multiple delays and failures to secure the needed

financing.  A copy of a Declaration executed by Avrohom Kaufman is attached as Exhibit 12.

### D.    RS1's Request for Dismissal of Its Bankruptcy Proceeding

21.    The September 2017 transaction closed on an expedited schedule and given the

emergency of RS1 seeking to avoid immediate forfeiture of the $2.5 million deposit.  *See* Ex. 5,

¶ 10.  Due to the time pressures, RS1 failed to obtain Bankruptcy Court approval for RS1's sale of

the Property.    Instead, after the transaction closed, RS1 filed a motion to dismiss the

RS1 Bankruptcy upon the consent of all creditors and the United States Trustee.  A copy of the

stipulation requesting consensual dismissal is attached as Exhibit 13.

22.    No action apparently was taken on RS1's request for dismissal, and the

RS1 Bankruptcy instead remained open before the Court but dormant.

### E.    Subsequent Claims Against Debtor's Property

23.    Eighteen months after the September 2017 transaction closed, Yehuda Salamon and

his affiliated agents, nominees, strawmen, and related entities embarked upon a litigation campaign

to attack the Debtor and its title in the Property.  The first effort was launched in the Bankruptcy

Court by RS1, which resulted in a *nunc pro tunc* approval of RS1's transfer of the Property, *release*

*of all claims by RS1 against Debtor other than as may concern an equity interest in Debtor*, and a

*finding that RS2 is nothing more than an affiliated strawman and "insider entity" of Yehuda*

*Salamon and RS1.*  A second and third effort were launched by "Lone Pine Associates, LLC" and "Beauty Brags" – entities known to be affiliated with Yehuda Salamon and his family members – which efforts were summarily rejected by the New York State Supreme Court.  A fourth effort was then launched by RS2 in the New York State Supreme Court, which removed action is now before this Court and comprises the same claims asserted by RS2's Claim Nos. 18 & 19.

### *i.  The RS1 Bankruptcy Court's Findings and Nunc Pro Tunc Approval*

24.      In March 2019, RS1, in its then Chapter 11 proceeding before the Honorable Robert D. Drain, commenced an adversary proceeding against Suffern seeking to set aside the September 2017 transaction based upon RS1's failure to secure Bankruptcy Court approval for the transaction and further allegations that Suffern had defrauded RS1.  *See RS Old Mill, LLC v. Suffern Partners LLC et al.*, Case No. 19-ap-08243 (RDD).

25.      RS1's Chapter 11 proceeding was then converted, with a Chapter 7 Trustee appointed to investigate the claims asserted.  The Trustee conducted an extensive investigation of the facts surrounding the September 2017 transaction and RS1's allegations in the adversary proceeding complaint.  Those efforts included the 341 meeting of creditors where RS1's principal, Yehuda Salamon, was questioned under oath.  A copy of the transcript is attached as Exhibit 14.

26.      Yehuda Salamon confirmed the structure of the September 2017 transaction, whereby the Property was transferred from Novartis to RS1, to RS2, and then to Debtor, so that Debtor's financing obtained from CPIF could enable the initial purchase from Novartis, which RS1 and Yehuda Salamon were unable to otherwise consummate.  *See* Ex. 14, p. 25:4-22.  Yehuda Salamon further confirmed and admitted that the dispute with Debtor (now being asserted through RS2) does not involve any failure by Debtor to pay amounts due to RS1 or any of its affiliates, but rather, that it concerns an alleged right to equity in the Debtor:

> **Q. [By the Chapter 7 Trustee:] … And the dispute is, really, who owns the equity in the entity that now owns the Novartis property, correct?**
>
> **A. [Yehuda Salamon:] Correct.**
>
> ***
>
> Q. So there was a dispute as to who owned … the interest in Suffern Partners?
>
> A. Right.
>
> Q. … And then there was an attempt … to reconcile the 65 percent versus 35 percent ownership in Suffern [Partners], right?
>
> A. Right.
>
> Q. … And that's really what this is all about, right?
>
> A. Right.

*See* Ex. 14, pp. 24:10-13, 48:21-49:8.

27.     Following Yehuda Salamon's admission, in August 2019, the Chapter 7 Trustee and Debtor entered into a settlement stipulation resolving the claims asserted by the adversary proceeding complaint. The Trustee agreed to withdraw the adversary proceeding, move for *nunc pro tunc* approval of RS1's conveyance of the Property to RS2, cancel a lis pendens filed against the Property, and *waive all claims of RS1 with respect to Debtor's title in the Property*. Debtor, in exchange, agreed to provide $2.5 million for an RS1 Chapter 7 estate fund, which amount the parties understood and expected would cover all legitimate creditor and administrative claims against RS1's Chapter 7 estate. A copy of the settlement stipulation is attached as Exhibit 15.

28.     Upon such settlement being sought for approval pursuant to Bankruptcy Rule 9019, a floodgate of claims came in from Yehuda Salamon's affiliated entities. Despite all parties having *consented* in 2017 to dismissal of the RS1 Bankruptcy, new claims were filed totaling approximately *$27 million*. Among such filed proofs of claim were:

(a) $13.5 million by RS2, a copy of which is attached as Exhibit 16.

(b) $10 million by Lone Pine Associates, a copy of which is attached as Exhibit 17.

(c) $1 million by Beauty Brags, a copy of which is attached as Exhibit 18.

29.    Such claims were ultimately disallowed in full upon the Trustee's and Debtor's objections, and the settlement between RS1 and Debtor was then approved.   Copies of the transcripts of those Court hearings are attached respectively as Exhibits 19, 20, and 21.   Notably, the Bankruptcy Court expressly cautioned against the frivolously filed proofs of claim:

> I'm really kind of sick and tired of debtors and trustees having to object to claims that really don't comply with the criminal reminder at the bottom of the proof-of-claim form.   And if any of those [claims], given the transactions here are by people that were aware of this transaction and are somehow now asserting a claim that violates that [criminal reminder], I think that should be referred to the U.S. Attorney ….

Ex. 19, p. 27:24-28:6.

30.    In conjunction with approving RS1's conveyance of the Property *nunc pro tunc* to September 5, 2017, the Court found that "[t]here was clearly funding in connection with [the] transaction," as that funding "was necessary" for RS1 to close the purchase from Novartis. *See* Ex. 21, p. 73:16-20, p. 77:18-19 (recognizing the RS1-RS2-Debtor transaction "enabled the Novartis transaction to occur").   The Court further found that RS2 was "***clearly an insider entity***" of Yehuda Salamon and RS1.   Ex. 21, p. 73:9-15 (emphasis added), p. 74:23-24 (noting that RS2 was "[Salamon's] company").   The Court further found that the parties "faced an impossibly short deadline to get Court approval of the transaction and the financing that was going to flow from it." Ex. 21, pp. 76:23-77:6.

31.    The RS1 Bankruptcy Court's approval of the settlement reflects a judicial finding that the Debtor in fact paid for the Property, and RS2 is therefore owed nothing from the Debtor. Indeed, it was Debtor's financing that made possible RS1's initial acquisition of the Property from

Novartis, and without such acquisition there could have been no subsequent transfers to RS2 and ultimately Debtor (with RS2 merely a strawman/nominee for RS1 and having no rights, claims, or interests of its own). *See* Ex. 21, p. 73:9-20. The RS1 Bankruptcy Court further noted, based on the adversary proceeding complaint and Yehuda Salamon's admissions at the 341 meeting, that the actual dispute only concerns a *claim to equity* in the Debtor. *See* Ex. 21, p. 80:1-14 (stating that actual dispute is based on Yehuda Salamon "allegedly … not obtaining his interest or rights [to Suffern's equity] as part of the … transaction with Suffern."). Lastly, the RS1 Bankruptcy Court approved the Trustee's waiver of all of RS1's claims that Debtor did not obtain good title to the Property. *See* Ex. 21, p. 80:10-24.

32.    On January 14, 2020, the RS1 Bankruptcy Court entered a written Order approving the Trustee's settlement with Debtor, including approval of RS1's sale of the Property *nunc pro tunc* to September 5, 2017. A copy of the Order is attached as Exhibit 22. RS1 and Yehuda Salamon appealed the Court's Order, and the District Court dismissed the appeal as equitably moot. A copy of the District Court's Order is attached as Exhibit 23.

### *ii.   The Lone Pine Associates and Beauty Brags Litigations*

33.    Lone Pine Associates and Beauty Brags separately commenced lawsuits against Debtor in the New York State Supreme Court, together with the filing of lis pendens against the Property. Copies of the complaints are attached respectively as Exhibits 24 and 25.

34.    Lone Pine Associates – an entity that Yehuda Salamon controlled – alleged that Debtor had somehow "swindled" transfer of the Property from RS1. *See* Ex. 24; Ex. 14, pp. 56:24-57:10.

35.    Beauty Brags – an entity controlled by Yehuda Salamon's son, David Salamon – similarly alleged that Debtor "swindled" transfer of the Property from RS1. *See* Ex. 25; Ex. 20, p. 18:7-13.

36.     Upon Debtor's motions, the New York State Supreme Court ultimately removed the lis pendens and dismissed both actions.  Copies of the Orders of dismissal are attached respectively as Exhibits 26 and 27.

### iii.  RS2's Litigation and the Unsubstantiated Allegations Against Debtor

37.     In April 2020, RS2 commenced an action in the New York State Supreme Court against Debtor, seeking to rescind RS2's conveyance of the Property to Debtor, to quiet title, for Debtor's alleged conversion of the Property, and for $30 million purportedly due and owing to RS2 in connection with the September 2017 transaction.  Yet again, a lis pendens was filed against the Property.  A copy of the RS2 complaint is attached to Claim Nos. 18 & 19.  *See* Ex. 1.

38.     Debtor pursued multiple applications for relief before the New York State Supreme Court, seeking to strike the lis pendens or for dismissal of the claims.  The New York State Supreme Court dismissed RS2's conversion claim, but otherwise denied Debtor's applications given the initial stage of the proceeding and that all inferences had to be drawn in favor of RS2. Copies of the New York State Supreme Court's Orders are respectively attached as Exhibits 28, 29, and 30.

39.     After Debtor filed its Chapter 11 petition, the RS2 litigation was removed to this Court.  RS2 subsequently filed its Claim Nos. 18 & 19.  *See* Ex. 1.  While RS2 purports to have filed two separate claims, they both concern and are supported solely by RS2's unverified New York State Court complaint.  Claim No. 18 purports to assert a claim in connection with RS2's demanded reliefs for rescission and to quiet title related to the September 2017 transaction. Claim No. 19 purports to assert a claim for $30 million in damages in connection with the September 2017 transaction.

## ARGUMENT

### I.    RS2'S CLAIM NOS. 18 & 19 ARE UNSUBSTANTIATED AND SHOULD BE REJECTED

#### A.    The Applicable Law

40.    Under Bankruptcy Code § 502(a), a party's claim, evidenced by a proof of claim, is "deemed allowed, unless a party in interest … objects." *See also* Fed. R. Bank. P. 3001(f). Once a party in interest objects to the claim, the Court "shall determine the amount of such claim …, and shall allow such claim in such amount, except to the extent that," among other things, "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1).

41.    While a proof of claim is typically considered *prima facie* valid, this is not so if it "is not supported by the requisite documentation," in which case a mere objection is enough to refute the claim and shift the burden to the claimant. *In re Aiolova*, Case No. 11-10503 (BRL), 2013 Bankr. LEXIS 4504, at *7 (S.D.N.Y. Bankr. Oct. 29, 2013) (Lifland, B.J.). *See also* Fed. R. Bankr. P. 3001(c) (when a "claim, or an interest in property of the debtor securing the claim, is based on a writing, the original or a duplicate shall be filed with the proof of claim."). Where the proof of claim includes some documentation of the amount allegedly owed, a party objecting to it "must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). *See also In re Aiolova*, 2013 Bankr. LEXIS 4504, at *6 ("[T]he objecting party must come forward with evidence of equal or greater value than that provided by the creditor in conjunction with the proof of claim."). Once the objector meets this requirement, the burden shifts to the claimant to prove its claim by a preponderance of the evidence. *See Sherman*, 245 B.R. at 773. Indeed, "[t]he

ultimate burden always rests with the claimant." *Id.*

42.    RS2 submits no evidence in support of its claims, and thus RS2 has not met its burden in light of this objection.  Additionally, the prior proceedings – including the testimony, Bankruptcy Court findings, and admissions of Yehuda Salamon and Avrohom Kaufman – all evidence that RS2 cannot meet its burden.  Accordingly, Claim Nos. 18 & 19 should be rejected.

**B.    RS2 Received Exactly What It Expected and was Entitled to Receive in Connection With the September 2017 Transaction**

43.    The September 2017 transaction was conducted at arms-length, with Debtor's purchase monies received in escrow and then distributed to all proper recipients as directed by all interested parties – including by RS2.  Evidence of the wire transfer confirmations, including Thomas Landrigan, Esq.'s receipt of $13,763,840.88 as counsel and escrow agent for his clients RS1 and RS2, is unrefuted.  Indeed, RS2's representatives – David Salamon and Marty Stern – even confirmed Mr. Landrigan's receipt of those monies and then directed and "agreed" to a further distribution.  *See* Ex. 7, Ex. F (Emails).

44.    RS2 has *no evidence* that it is entitled to anything from Debtor.  Nor can RS2 refute the prior Bankruptcy Court findings with respect to the September 2017 transaction, including that:

(a)    there was "clearly funding," as Debtor's monies were "necessary" for RS1 to acquire the Property from Novartis in the initial leg of the transaction.  *See* Ex. 21, pp. 73:16-20.

(b)    RS2 was "clearly an insider entity" of RS1 and is "[Yehuda Salamon's] company."  *See* Ex. 21, 73:9-15; 74:23-24.

(c)    The September 2017 transaction was a single-integrated transaction structured in order to allow RS1 to benefit from Debtor's funding for the Property, and pursuant to which RS2 expected to receive nothing.  *See* Ex. 21, pp. 73:16-20; 77:4-6 (finding that the parties "faced an impossibly short deadline to get Court approval of the RD transaction and the financing that was gonna flow from it."); 77:18-19 (finding that Debtor's financing "enabled the Novartis transaction to

16

occur.").

45.     In conjunction with recently approving Debtor's subsequent sale of the Property to

TT Holder Entity LLC on June 29, 2021, this Court similarly acknowledged the structure of the

September 2017 transaction:

> [RS1] eventually worked out a deal to purchase and sell the
> [P]roperty in one transaction by assigning the [P]roperty to [RS1's]
> newly formed affiliate, [RS2], which would then go on to assign it
> to [Debtor].  The structure of the transaction, as I understand it,
> would allow [RS1] to avoid forfeiture of its $2.5 million deposit on
> the [P]roperty while allowing the purchase of the [P]roperty to be
> funded by parties other than [RS2].  And in fact, CPIF [] provided
> funding to Suffern as part of the transaction.

Dkt. No. 79, p. 17:9-17 (emphasis added).

46.     RS2 also has admitted these facts.   According to RS2's sole member (and the

brother-in-law of Yehuda Salamon), Avrohom Kaufman, on September 5, 2017 he executed papers

under an "emergency" situation in order "to arrange financing for [Yehuda Salamon]" and his

company RS1 related to the "Novartis [] property."  *See* Ex. 12, pp. 1-2.  Avrohom Kaufman

admitted that he "was not putting up any money and that [his] involvement with the transaction

would only last a couple of days" and that "there would be no legal consequences to [him] because

it would be a quick 'in and out' situation."  *See* Ex. 12, p. 2.  Avrohom Kaufman's statements are

consistent with the RS1 Bankruptcy Court's findings that: (1) RS2 is actually Yehuda Salamon's

own company and thus nothing more than a strawman and "insider entity" of RS1 (notwithstanding

that Avrohom Kaufman is purportedly the sole named member); and (2) RS2 owned the Property

for no more than a few minutes before knowingly flipping it to Debtor.  *See* Ex. 21, pp. 73:9-20,

74:19-75:1.  As further confirmation, the Court can take judicial notice that the RS1 Bankruptcy

Court also disallowed RS2's proof of claim which stated under penalty of perjury that it was owed

$13.5 million out of the September 2017 transaction.  *See* Ex. 16; Ex. 21, pp. 32:7-33:21.

47.    RS2 has no *evidence* to support its Claim Nos. 18 & 19.  As such, RS2 may seek to rely upon the New York State Supreme Court's denial of Debtor's motions to dismiss as "evidence" that RS2 has valid claims against the estate.  However, Debtor's requests for dismissal were assessed under an entirely different standard than that which now applies to RS2 on its proofs of claim herein, without any adverse findings against the Debtor.  *Compare Prestige Caterers, Inc. v. Siegel*, 88 A.D.3d 679, 679 (2d Dep't 2011) (stating that on a CPLR 3211 motion to dismiss, "the court must afford the pleadings a liberal construction, accept the complaint's allegations as true, and provide plaintiff the benefit of all favorable inferences."); *with Sherman*, 245 B.R. at 773 (stating that once a claim is objected to, claimant must prove its claim by a preponderance of the evidence).

48.    RS2 cannot sustain its burden to demonstrate an entitlement to $30 million – or any claim – against the Debtor.  Accordingly, Debtor's objection to RS2's Claim Nos. 18 & 19 should be sustained in full.

## II.    ALTERNATIVELY, RS2'S CLAIM NOS. 18 & 19 SHOULD BE ESTIMATED AT ZERO DOLLARS FOR PLAN VOTING AND DISTRIBUTION PURPOSES

49.    The Bankruptcy Code allows the Court to estimate the amount of a claim that represents "any right to payment arising from a right to an equitable remedy for breach of performance." 11 U.S.C. § 502(c)(2).  *See also* Fed R. Bankr. P. 3018(a) ("[T]he court after notice and a hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan.").

50.    To the extent RS2's claims are not immediately disallowed, they should be estimated at zero dollars for purposes of Plan-voting and distributions thereunder.

51.    RS2 – together with Yehuda Salamon and their affiliated entities – have spent *years* pursuing wasteful claims against Debtor and which ultimately led to this Chapter 11 proceeding.

Such efforts included: (i) RS1's adversary proceeding against Debtor that an independent Trustee ultimately concluded had no merit; (ii) RS1's lis pendens filed against the Property, which was ultimately removed after nearly a year of litigation; (iii) RS1's appeal from the Court's approval of the *nunc pro tunc* sale, which was rejected as moot; (iv) the RS2, Lone Pine Associates, and Beauty Brags proofs of claim filed against the RS1 estate, which were all disallowed in their entirety; (v) Lone Pine Associates' New York State Supreme Court action against Debtor and the related lis pendens against the Property, which was summarily dismissed; (vi) Beauty Brags' New York State Supreme Court action against Debtor and the related lis pendens against the Property, which likewise was summarily dismissed; and (vii) RS2's New York State Supreme Court action against Debtor and the related lis pendens, which are now before this Court at Adversary Proceeding No. 21-07027. Debtor incurred hundreds of thousands of dollars in legal expenses to resolve these litigations, all of which were designed only to procure delay and increase Debtor's expense in the hopes of extracting a settlement payment.

52.    Regrettably, it is apparent that RS2 will continue engaging in wasteful litigation to delay and increase the costs to administer Debtor's estate herein. Indeed, RS2 has already: (viii) unsuccessfully objected to Debtor's sale of the Property to a third-party buyer and which resulted in an $8 million benefit to the estate, based on little more than an unsupported appraisal purportedly "made as instructed" at the requests of Lone Pine Associates and Avrohom Kaufman; (ix) appealed the sale order; (x) twice unsuccessfully objected to the Debtor's applications to retain its long-time counsel; (xi) claimed to demand a jury and filed a motion for remand of the adversary proceeding, *notwithstanding that it filed the instant Claim Nos. 18 & 19 and thus has consented to this Court's jurisdiction for administration of those claims as a core proceeding*[1]; and (xii) moved

---

[1]    *See, e.g., Langemkamp v. C.A. Culp,* 498 U.S. 1043 (1990) (holding that "by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power" and that, in doing so, the creditor is not entitled to a jury trial).

for conversion to a Chapter 7, a bad faith litigation tactic intended to, inter alia, wrest control of

the Debtor's objection to RS2's claims to a Chapter 7 trustee which would serve only to delay and

increase and add an entire new layer of administrative costs. RS2's efforts are contrived and

designed solely to duplicate litigation and delay, as the record is clear that it has no viable claim

as a creditor of the estate.

53.     For all of these reasons, in the alternative, the Court can estimate the value of RS2's

Claim Nos. 18 & 19 at zero dollars for purposes of Plan voting and distributions.[2]

54.     A proposed Order granting the Motion is annexed hereto as Exhibit 31.

## CONCLUSION

**WHEREFORE**, Debtor respectfully requests that the Court grant this Motion in full,

together with such other and further relief as the Court deems just and proper.

Dated: White Plains, New York
       August 12, 2021

> DAVIDOFF HUTCHER & CITRON LLP
> *Attorneys for the Debtor*
> 120 Bloomingdale Road, Suite 100
> White Plains, New York 10605
> (914) 381-7400
>
> By: */s/ Jonathan S. Pasternak*
>        Jonathan S. Pasternak
>        Robert L. Rattet

---

[2]    Debtor reserves all rights to pursue relief against RS2 and/or its counsel, including for sanctions and/or costs as Debtor may incur in responding to frivolous and legally deficient applications. *See, e.g.,* FRBP 11; 28 U.S.C. 1927.

## DECLARATION OF DEBTOR

**ISAAC LEFKOWITZ** hereby declares the following under penalties of perjury:

1.      I am the CEO of the Debtor.

2.      I am fully familiar with the Debtor's financial affairs, its books and records, and with the facts and circumstances set forth in the above Motion.

3.      The facts set forth in the above Motion are true and correct to the best of my information and belief.

Dated: August 12, 2021

*/s/ Isaac Lefkowitz*
Isaac Lefkowitz, CEO