MEISTER SEELIG & FEIN LLP
125 PARK AVENUE, 7TH FLOOR
NEW YORK, NEW YORK 10017
TELEPHONE: (212) 655-3500
FACSIMILE: (212) 655-3535

*Counsel to Continental Kosher Catering Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------x
:
In re:                              :    Chapter 11
                                    :
SUFFERN PARTNERS LLC,               :    Case No.: 21-22280 (SHL)
                                    :
            Debtor.                 :
                                    :
------------------------------------x

**LIMITED OBJECTION OF CONTINENTAL KOSHER CATERING, INC**
**TO THE DEBTOR'S CHAPTER 11 PLAN OF LIQUIDATION**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND FACTS.............................................................................................................2

    The Chapter 11 Plan of Liquidation and Accompanying Disclosure Statement .......................3

    Ongoing State Court Proceedings...............................................................................................4

ARGUMENT .................................................................................................................................5

  I.    The Plan Fails to Provide a Proper Reserve for Disputed Claims .......................................5

  II.   The Plan's Funding is Mired in Uncertainty Given Continental's Ongoing Meritorious Appeal of the State Court Judgment   and Confirmation of the Plan Should be Postponed Until After the State Court Appeal Has Concluded In Order to Prevent Inconsistent Adjudications ...................................................................................................................7

CONCLUSION............................................................................................................................10

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                           **Page(s)**

*30 BROAD, LLC, v. Charles LAWRENCE*,
  No. 600094/06, 2006 WL 5112781 (N.Y. Sup. Ct. Aug. 01, 2006) .......................................... 8

*In re Am. Cap. Equip., LLC*,
  688 F.3d 145 (3d Cir. 2012) ..................................................................................................... 9

*In re Enron Corp.*,
  No. 01-16034 (AJG), 2006 WL 544463 (Bankr. S.D.N.Y. Jan. 17, 2006) ............................ 7, 9

*In re Motors Liquidation Co.*,
  447 B.R. 198 (Bankr. S.D.N.Y. 2011) ................................................................................... 6, 9

*In re Weiss-Wolf, Inc.*,
  59 B.R. 653 (Bankr. S.D.N.Y. 1986) ........................................................................................ 6

*Rubenstein v. Arbeitman*,
  265 A.D. 893, 37 N.Y.S.2d 779 (3d Dep't 1942) ...................................................................... 8

*Wyle Inc. v. ITT Corp.*,
  130 A.D.3d 438 (2015) .............................................................................................................. 8

**Statutes**

Bankruptcy Code § 502(c) ............................................................................................................... 2

Bankruptcy Code § 1123(a)(4)(5) ............................................................................................... 6, 7

N.Y. Uniform Just. Ct. Act §§ 202 and 208 ................................................................................... 8

**Rules**

N.Y. C.P.L.R. 5519(a)(3) ................................................................................................................ 8

Continental Kosher Catering Inc. ("Continental"), by its counsel, Meister Seelig & Fein LLP, hereby files this Limited Objection (the "Objection") to the confirmation of Suffern Partners LLC (the "Debtor") Chapter 11 Plan of Liquidation (the "Plan") [ DKT No. 98]. Continental reserves its rights to object to the Plan and Motion on additional grounds. In support of this Objection, Continental respectfully represents as follows:

## PRELIMINARY STATEMENT

1. In yet another maneuver to evade responsibility for the substantial damages caused to Continental by fraudulently inducing it to lease an unusable industrial space and breaching the underlying lease's unambiguous terms,[1] the Debtor now seeks to have the Court approve a Chapter 11 Plan of Liquidation and Disclosure Statement that will see the Debtor's equity investors recover $897,778.40 all the while ensuring that Continental, amongst the largest unsecured creditors of the Debtor, will never be made whole. In other words, the Debtor is asking the Court to confirm a plan that funds distributions to its equity holders with a bonded judgment that is the subject of an ongoing appeal while stripping Continental of its voting rights as an unsecured creditor and denying it of an opportunity to ever receive adequate distributions.

2. Indeed, with the goal of ensuring that the Debtor's principals leave these proceedings with almost $900,000, the Debtor seeks approval of a Chapter 11 Plan of Liquidation that is partially funded by a bonded judgment that is the subject of an ongoing meritorious appeal and that does not even provide for any meaningful reserve to adequately satisfy disputed claims.

---

[1] During oral arguments on the Debtor's objection to Continental's claim, the Debtor's counsel argued that the underlying lease specified that Continental was not relying on any representations other than those provided for in the lease. Notably, all of the facts giving rise to Continental's claims directly pertain to representations specifically made by the Debtor to Continental in the lease agreement, as the Justice Court found in the Debtor's eviction proceedings against Continental.

1

3.     As explained below, there are provisions in the plan relating to the treatment and distributions with respect to disputed claims which are improper, violate provisions of the Bankruptcy Code, including §§ 502 (c) and 1123, and that unduly and needlessly prejudice Continental for the benefit not of the estate or its creditors but for the Debtor's equity holders.

**BACKGROUND FACTS**

4.     On June 23, 2021, well before the July 26, 2021 Bar Date, Continental filed its Proof of Claim and accompanying detailed addendum for $3,955,000 in connection with the Debtor's fraudulent conduct and breaches of its contractual obligations under the relevant lease agreement (the "Claim"). Thus, Continental is amongst the largest unsecured creditors of the Debtor.

5.     For a complete recitation of the relevant facts pertaining to the Debtor's unlawful conduct in connection with inducing Continental to lease an unusable industrial space and the resulting damages, the Court is respectfully referred to the Declaration of Avi Meyer, dated June 11, 2021 (the "Meyer Declaration") [Dkt. No. 44].

6.     On July 6, 2021, the Debtor filed an objection to the Claim seeking an order disallowing the Claim (the "Claim Objection") and a hearing was held before the Court on August 9, 2021. As of the filing of this Objection, the Court has not reached a final decision on the Debtor's Claim Objection.

7.     On July 21, 2021, the Debtor filed: (1) its Chapter 11 Plan of Liquidation [DKT No. 98]; and (2) Disclosure Statement [DKT No. 99].

8.     In Accordance with all relevant Notice of Hearings, the deadline to file opposition papers for the motion and Disclosure Statement is August 26, 2021 while the deadline to oppose the Chapter 11 Plan of Liquidation is October 5, 2021.

**The Chapter 11 Plan of Liquidation**
**and Accompanying Disclosure Statement**

9. The Plan provides for five classes of claims, with Class 4 being that of the "Allowed General Unsecured Claims" and Class 5 pertaining to the holders of "Allowed Interests in the Debtor" (i.e., equity holders of the Debtor). *See* DKT 98 at P. 14.

10. According to the Disclosure Statement, the Debtor, without considering Continental's substantial Claim, estimates that Class 4 claims of the Allowed General Unsecured Claims will total approximately $7,365,000. *See* DKT 99 at P. 26.

11. In pertinent part, the Plan provides that a claim shall be deemed "Allowed" if it has been "allowed by a Final Order" or if it has "been scheduled by the Debtor as not disputed, not contingent and not unliquidated." *See* DKT. 98 At P. 2.

12. To that end, Disputed Claims include those for which a proof of claim has been "filed with the Bankruptcy Court and an Objection to the allowance has been or is interposed within the period of time set forth [in the Plan] or by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure or an Order of the Bankruptcy Court extending such time for the filing of such objection, and to which, *such objection has not been determined by a Final order of the Bankruptcy Court or withdrawn*." *See* DKT. 98 At P. 5 (emphasis added).

13. However, the Plan, without any details, vaguely provides that the "Disbursing Agent shall reserve for the account of each holder of a Disputed Claim that property which would otherwise be distributable to such holder." *See* DKT. 98 At P. 20. Significantly, the Plan and the Disclosure Statement provide no information or details whatsoever as to the funding and extent of the "Reserve for Disputed Claims." Rather, the Plan only provides for a "Post-Confirmation Reserve" with only $400,000 held in reserve to only be used for US Trustee fees and post-confirmation fees and expenses. *See* DKT. 98 At P. 7.

3

14. Furthermore, the Disclosure Statement's Plan Distribution Analysis [DKT No. 99, Exhibit B] indicates that the Plan is to be partially funded by the bonded $275,000 judgment in connection with the state court trial in the Justice Court, which the subject of an ongoing meritorious appeal. *See* DKT No. 99, Exhibit B.

**Ongoing State Court Proceedings**

15. As a result of the Debtor's deceptive conduct described in Meyer Declaration, and as permitted under the terms of the Lease, a Utilities Provision Agreement with the Debtor, and applicable laws, Continental withheld payment of rent until the Debtor met its contractual obligations

16. However, on July 17, 2019, the Debtor filed a non-payment petition in the Justice Court: Town of Ramapo, County of Rockland. During the seven-day trial, Continental was barred from asserting any of its *affirmative* counterclaims for fraud or breach of contract because sections 202 and 208 of the Uniform Justice Act provide that Justice Courts do not have jurisdiction over matters seeking money judgments exceeding $3,000.

17. While recognizing that the Debtor breached its contractual obligations under the governing lease agreement, including specific representations memorialized in writing in the lease agreement, with respect to the leased premises, the Justice Court nevertheless ruled in its Decision and Order that Continental was only entitled to a rent reduction of 10% per month and a one month rent abatement while also granting a judgment in favor of the Debtor in the amount of $274,323.52.

18. As such, a warrant of eviction was issued on August 25, 2020. To date, the warrant has not been executed and its execution has been stayed until at least August 31, 2021 pursuant to the COVID-19 Emergency Protect Our Small Business Act (S.6362-A/A.7175-A), signed into law

4

by Governor Cuomo on May 4, 2021. Continental filed the requisite Hardship Declaration with the Justice Court.

19. Given significant legal and factual errors in the Justice Court's Decision and Order, Continental promptly filed a notice of appeal on December 14, 2020. The appellate proceedings are ongoing.

20. Continental posted a supersedeas bond in the amount of $329,188.22 on December 15, 2020.

21. The Debtor's proposed plan baselessly assumes that Continental will not succeed on appeal and that the bond will be released to the Debtor to be distributed to creditors and equity.

## ARGUMENT

### I. The Plan Fails to Provide a Proper Reserve for Disputed Claims

22. The purpose of a disputed claim reserve is to protect the interests of holders of Disputed Claims when plan disbursements are made to other creditors before the dispute is resolved. It ensures that should the Disputed Claim be allowed, there will be sufficient funds available to match prior disbursements made to other allowed claimants.

23. To that end, Disputed Claim Reserves should be true "reserves," defined as a fund of money set aside by a Debtor to cover all potential claims. As a verb, "reserve" means "something retained or stored for use." BLACK'S LAW DICTIONARY 1564 (11th ed. 2019).

24. In this way, a disputed claim reserve allows a plan to comply with Section 1123(a)(4) of the Bankruptcy Code, which requires all plans to "provide the same treatment of each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest."

25. The Southern District of New York has routinely "required debtors to establish reserves with assets sufficient to pay disputed claims in full to allow creditors full *pro rata* recovery on their claims." *In re Motors Liquidation Co.*, 447 B.R. 198, 215 (Bankr. S.D.N.Y. 2011).

26. As outlined above, the Plan does not obligate the Disbursing Agent to reserve the amount of any distributions to which Continental would be entitled under the Plan when, as we submit it will, its claim be deemed allowed by the Court.

27. In fact, the plan simply makes no provision for holding any specified or adequate amounts, which would have otherwise been distributed to a creditor whose claim is subject to dispute, in a segregated reserve account.

28. There is no denying that Continental's Claim is a disputed one within the meaning the Plan due to the fact that the Debtor's Claim Objection has "not been determined by a Final Order of the Bankruptcy Court." Thus, Continental must be protected by an adequately funded reserve to ensure that its claims can be satisfied in the same manner as all other Class 4 General Unsecured Creditors once it becomes an allowed claim following a Final Order by this Court.

29. However, should the Plan be confirmed as currently constructed, it would result in all the Debtor's assets being distributed to other unsecured creditors or to the subordinate Class 5 Allowed Interest Claims (i.e., those belonging to the Debtor's Principals), with no distributions to Continental.

30. Such a scheme violates, among other sections. § 1123(a)(4) (same treatment for each claim in a particular class], §1123(a)(5) [failure to provide adequate means to implement the plan] and §1129(a)(3) [failure to propose a plan in good faith]. *See In re Weiss-Wolf, Inc.*, 59 B.R. 653, 655 (Bankr. S.D.N.Y. 1986) (holding that "a debtor must make provision for payment of

disputed claims so that if and when allowed the claims have reasonable assurance that they will receive identical treatment. Here it is evident that the Debtor's scheme is to leave the [creditor] with an empty bag as the Debtor proposes to distribute all known assets prior to resolution of the disputes respecting the [creditor's] claims").

31. Thus, Continental objects to the confirmation of the Plan unless and until the Debtor has demonstrated that the Plan is feasible, including but not limited to the Debtor's illustration of their ability to fully reserve for Continental's claim in an amount no less than $3,955,000. In the absence of such relief Continental will be left with "an empty bag" as all of the Debtor's known assets would be distributed prior to the resolution of Continental's Claim. *Id.*; *see In re Enron Corp.*, No. 01-16034 (AJG), 2006 WL 544463, at *4 (Bankr. S.D.N.Y. Jan. 17, 2006) (explaining that "advancing a ratable distribution of assets among the creditors" is a "statutory purpose" of the Bankruptcy Code).

II. **The Plan's Funding is Mired in Uncertainty Given Continental's Ongoing Meritorious Appeal of the State Court Judgment and Confirmation of the Plan Should be Postponed Until After the State Court Appeal Has Concluded In Order to Prevent Inconsistent Adjudications**

32. In addition to not providing for an adequate reserve for Continental's disputed claim, the Plan's confirmation should also be denied, or at the very least postponed, because its funding is reliant on a bonded judgment that is the subject of an ongoing appeal.

33. As outlined above, Continental filed a meritorious and timely appeal to the Justice Court's Decision and Order, which remains pending in the Appellate Term, Second Division.

34. Insofar as the $275,000 judgment is concerned, the appeal is premised on the fact that the Debtor's fraudulent conduct coupled with clear and explicit contractual language permitted Continental to withhold rent, as a matter of law and fact, until the Debtor: (1) delivered the entirety

7

of the leased premises and (2) rectified all issues with the building in which the premises was located that forced Continental to shut down its business and suffer millions of dollars in damages.

35. Notably, every single misrepresentation upon which Continental based its claims against the Debtor is explicitly provided for in the lease. *See 30 BROAD, LLC, Plaintiff, v. Charles LAWRENCE, Defendant.*, No. 600094/06, 2006 WL 5112781 (N.Y. Sup. Ct. Aug. 01, 2006) (Explaining, in a case involving a lease dispute, that "a fraud claim can be based on a breach of contractual warranties notwithstanding the existence of a breach of contract claim"); s*ee also Wyle Inc. v. ITT Corp.*, 130 A.D.3d 438 (2015) ("a fraud claim can be based on a breach of contractual warranties notwithstanding the existence of a breach of contract claim"); *see also Rubenstein v. Arbeitman*, 265 A.D. 893, 37 N.Y.S.2d 779, 779 (3d Dep't 1942) (holding that a tenant could maintain a breach of contract and fraud cause of action where, in the making of the lease, the landlord falsely represented that the building's sewage system was in good condition).Once Continental has successfully prevailed on the appeal, the $275,000 bonded judgment will not be released to the Debtor but will rather be returned to Continental. While the Debtor calculates the bonded judgment as being an asset of the estate ripe for distributions, New York law clearly provides that the enforcement of money judgments is stayed without the need for court orders upon the posting of a supersedeas bond. *See* N.Y. C.P.L.R. 5519(a)(3).

36. Furthermore, while the Justice Court did reject Continental's affirmative *defenses* at trial, it did not dismiss Continental's affirmative *counterclaims* as the Disclosure Statement falsely provides, which were not, and could not, be part of the Justice Court action because they were barred by the Justice Court's $3000 jurisdictional limit as provided for in sections 202 and 208 of the Uniform Justice Court Act. *See* DKT No, 99 at P. 4; *see* cap e. Thus, once the appeal

has been adjudicated, Continental will be free to assert its claims fully without limitation, which total millions of dollars.

37. Indeed, bankruptcy courts throughout the country have held that "a plan will not be feasible if its success hinges on future litigation that is uncertain and speculative, because success in such cases is only possible, not reasonably likely." *In re Am. Cap. Equip., LLC*, 688 F.3d 145, 156 (3d Cir. 2012). Thus, Continental prevails on its appeal, it will be free to assert its claims fully without limitation and the Debtor will not be able to hide behind questionable estoppel arguments.

38. Stated otherwise, confirmation of the Plan before the appeal has been concluded carries the significant risk of inconsistent adjudications, uncertainty as to the actual value of the bankruptcy estate and will ultimately prevent Continental, amongst the largest unsecured creditors, from recovering any of the damages it incurred as a result of the Debtor's unlawful conduct.

39. The Debtor is fully aware of these facts and is as such determined to have the Chapter 11 Plan of Liquidation confirmed as soon as possible so that it can ensure that its principals walk away with almost $900,000 while also evading responsibility for the substantial damages it has caused Continental. Such a result stands in stark contrast of ensuring a ratable distribution of the bankruptcy estate's assets to its creditors. *See   In re Enron Corp.*, 2006 WL 544463, at *4.

40. Furthermore, delaying confirmation of the Chapter 11 Plan of Liquidation will create certainty as to the actual total value of the estate's assets and the unsecured claims and ultimately serve to better provide a ratable distribution to *all* creditors.

**CONCLUSION**

41. For all the reasons set forth herein, Continental respectfully requests that confirmation of the Chapter 11 Plan of Liquidation be denied or alternatively postponed until after the state court appeal has been adjudicated.

Dated: New York, New York
August 20, 2021

**MEISTER SEELIG & FEIN LLP**

   /s/ Jeffrey Schreiber
By: Jeffrey Schreiber, Esq.
    Michael Benzaki, Esq.
125 Park Avenue, 7th Floor
New York, New York 10017
Tel: (212) 655-3500
*Attorneys for Continental Kosher Catering Inc.*